EMERY et al. v. CENTRAL TRUST & SAFE DEPOSIT CO.

(Circuit Court of Appeals, Sixth Circuit.   May 6, 1913.)

No. 2,292.

1. COURTS (§ 405*)—APPEAL—CROSS-BILL—DISMISSAL.

Dismissal of a cross-bill, which is only a part of the main litigation, is not appealable, under Judicial Code (Act March 3, 1911, c. 231) § 128, 36 Stat. 1133 (U. S. Comp. St. Supp. 1911, p. 193), authorizing appeals and writs of error to review final decisions, etc.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*]

2. COURTS (§ 405*)—JUDGMENTS APPEALABLE—CROSS-BILL PRAYING A STAY OF PROCEEDINGS.

Where the dismissal of a cross-bill amounts to the denial of a stay of proceedings, made in the case other than that in which the stay is operative, it constitutes in effect the denial of an injunction, within Judicial Code (Act March 3, 1911, c. 231) § 129, 36 Stat. 1134 (U. S. Comp. St. Supp. 1911, p. 194), giving appeal from an order or decree granting or refusing an injunction: but if the order refusing a stay is made in the case in which the desired stay would operate, then the dismissal of the cross-bill would not amount to denial of such an injunction, and would not therefore be appealable.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*]

3. COURTS (§ 405*)—APPEAL—EQUITY—CROSS-BILL—DISMISSAL.

Complainant, having leased certain property from defendants with a right of renewal, the rent for the renewal period to be fixed by an appraisement, filed a bill alleging that appraisers had been unable to agree, and that by reason of divergent views as to the method to be adopted a new appraisal would not be effective, and prayed that the court determine the question. Defendants filed what was denominated a "cross-bill," setting up in detail the physical condition of the premises, and that cross-complainants desired another appraisement, after a decree directing that the same be had in accordance with their contentions. The cross-bill also set up the institution of suits in a state court, their removal to the federal court and motion to consolidate, and prayed that all further proceedings in such suits be stayed until complainant in the original bill should join in the appointment of appraisers, and until an appraisement be made fixing the money rental, to be reported to the court.   Held, that defendants' bill was a pure cross-bill, in effect seeking a stay in the case in which the stay would operate; and hence the dismissal of the cross-bill on demurrer was not appealable prior to final decree in the principal suit.   .

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by the Central Trust & Safe Deposit Company against Mary M. Emery and the Girard Trust Company, as trustee, etc. From a decree dismissing defendants' cross-bill, they appeal. Dismissed.

In 1884 the predecessors in interest of appellants (whom we shall speak of as the "Emerys") gave appellee a written lease of the front 63 feet of the first floor of the St. Paul Building in Cincinnati (together with two rooms in the basement), to be occupied by the lessee as "a bank, trust company, and safe deposit." The lease ran until May 31, 1909, at an annual rental of $8,000. It contained this provision: "At the expiration of the term of this lease, said lessee shall have the privilege (having given one year's written notice of its desire therefor) of renewing this lease for another term of twenty-five (25) years, commencing June 1, nineteen hundred and nine (1909), upon the same terms and conditions herein contained, except the money rental, which shall be fixed by three appraisers chosen in the usual way." In 1904 the Emerys gave appellee another lease, covering the remainder of the ground floor of the building (except certain hallway rights not necessary to specify), together with a room on the second floor. This lease likewise ran until May 31, 1909. It contained the same provision for renewal as the 1884 lease.

On December 17, 1910, appellee filed its petition in the court of common pleas for Hamilton county, Ohio, against the Emerys, setting up the lease of 1884 and the renewal privileges mentioned, and alleging that it had exercised its privilege of renewing the lease for a further term of 25 years, beginning June 1, 1909, on the same terms and conditions as contained in the lease (except the money rental), and had given notice thereof and of its readiness to choose the appraisers to fix the money rental, and to comply with all the other terms required by the lease. It further alleged that, pursuant to such terms, it appointed one appraiser and the Emerys another, "to fix the money rental" to be paid under the renewal term; that the appraisers (first, the two selected by the parties, and later with the addition of a third chosen by the other two), with the aid of briefs and arguments of the parties and their counsel upon both facts and the law, and (in the case of two of the appraisers) after receiving opinions from their own personal and independent counsel as to their duties and the law governing the basis of rental appraisal, were unable to agree, and (because the parties thereto could not agree) even after offering to accept as their own any conclusion the parties might agree upon as to the rental or the rules governing its ascertainment; and that the appraisers had accordingly filed with the parties their final report of disagreement on the questions submitted, with their reasons therefor and conclusions thereunder, and have asked to be and have been, "with the consent of plaintiff and defendants hereto, discharged." The petition further alleged that "in view of the widely divergent views of said appraisers, of said parties, of the counsel of said parties, and of the disinterested counsel of two of said appraisers, the questions involved in this ascertainment of the rental for said new term, both of fact and of law, can never be finally settled and determined, unless the said new rental for said renewed term be ascertained and fixed by a court having jurisdiction and power finally to determine all of said questions, and that any further attempt to settle and determine said matters, other than by an action in and adjudication by such court, will only result in delay and needless expense to the plaintiff and defendants." The court was accordingly asked to determine the rental to be paid during the renewed term.

On the same 17th day of December, appellee filed its petition in the superior court of Cincinnati against the Emerys, for relief with respect to the 1904 lease, making substantially the same allegations (so far as applicable) and containing the same prayer for relief as in the suit in the court of common pleas. The Emerys (appellants) removed both suits to the District Court of the United States, by reason of diverse citizenship of the parties.

Before answering these petitions, appellants moved for a consolidation of the two suits, and that the plaintiffs therein be required to replead according to the practice in equity. Before the motions were passed upon, answer was filed to each petition, substantially admitting, so far as material here and except as herein stated, the allegations referred to. The answer contained this clause: "These defendants deny that the amount of said rental can never be finally settled and determined, as is averred in the bill of complaint, unless said new rental be ascertained and fixed by this court without the aid of the appraisers provided for in said lease, and they deny that any further attempt to fix said rental would only result in needless expense and unnecessary delay. These defendants say that the principal reason why said appraisers did not agree was because of the unjust claim made by the complainant to the appraisers that the two premises be considered as if there were no connection between the two." The answer further stated that appellee had refused to appoint other appraisers to fix the money rental for the renewed term, and therefore defendant denied that appellee had "made every effort to settle said controversy."

On June 3, 1911, appellants filed in the court below what they denominated a cross-bill, setting up the two leases, together with the provision for renewal, alleging that defendant came into possession, by virtue of the two leases, of the whole of the ground floor of the building (except the hallway rights before mentioned); appellee's rightful removal, at a large expense, of a brick wall, existing when the 1901 lease was made, between and separating that part of the ground floor premises included in the 1884 lease and that included in the 1904 lease, thereby throwing the two ground floor premises into one, and making other alterations and improvements and additions "for the purpose of harmonizing in the matter of usefulness and appearance the two premises," whereby the value of each of the premises relative to each other was alleged to be greatly increased; and that ever since June 1, 1904, the appellee has used the two premises as one. The bill alleged the notice by appellee of its exercise of the privilege of renewing both leases, the selection of appraisers to fix the money rental on renewal, the futile attempt of the appraisers and parties to agree upon the rental, substantially (so far as material here) as in the bills filed in the state courts, except that the reason for such failure of the appraisers to agree was specifically alleged to be a difference of opinion as to whether the money rental for the renewal period should be fixed with reference to the physical condition of the two premises on May 31, 1909, when the original terms of both leases expired, or whether with reference to that condition on May 1, 1904, when defendant took possession under the 1901 lease. The bill alleged that this divergence of views as to the basis of appraisement would prevent any appraisement of the rental being agreed upon "by said or any appraisers"; that complainants desired another attempt at an appraisement, and believed that other appraisers could and probably would fix the rental, and expressed a willingness that other appraisers be appointed for the purpose, of all of which they informed defendant; and alleged defendant's refusal to take part in the selection of other appraisers. The bill set up the two suits in the state courts, their removal to the court below, complainants' motion to have the two cases consolidated, and the then pendency of said motion; the filing of answers in said suits, the principal allegations of the petition denied by the answer being in effect stated to be those which are replied to by the paragraph in the answer quoted in this statement; alleged that by the exercise of its privilege of renewal appellee agreed that the money rental should be fixed in the manner provided in the leases, and that appellants are entitled to have it fixed that way; that it is not impracticable to have it so fixed, but that, by reason of the conflicting and irreconcilable claims as to the basis of rental appraisement, it is necessary that the court determine the rights of the parties with reference to the matters in dispute, as well as the duties of the appraisers, in order to enable the latter to fix the rentals properly, intelligently and justly. The court was asked to decree that the appraisement be made according to complainants' contentions, and that upon the making and return of such appraisement, in conformity with

the orders of the court, specific performance be decreed. The bill prayed that all further proceedings in the two cases mentioned be stayed (except the determination of the motions to consolidate and to require repleading) until the appellee should join in the appointment of appraisers, and until the latter shall be chosen in good faith, and an appraisement made by them fixing the money rental be reported to the court, or until good cause shown why the same had not been made.

A demurrer to this bill was sustained on the ground of lack of equity, and, on complainants refusing to plead further, the bill was dismissed. Before the order of dismissal was entered, the motions to consolidate and for repleader were granted, and bills of complaint on repleader filed. A single answer to these two bills was filed after the entry of dismissal mentioned. This answer differs, in no respects material here, from the answers filed before consolidation and repleader. From that dismissal an appeal has been taken to this court. Motion to dismiss the appeal has been made, and was heard in connection with the argument upon the merits.

Harmon, Colston, Goldsmith & Hoadly and Jenney & Smith, all of Cincinnati, Ohio, for appellants.

W. Worthington and Frank O. Suire, both of Cincinnati, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge (after stating the facts as above). [1] The motion to dismiss the appeal is grounded upon the proposition that the bill in question is merely a cross-bill, and thus only a part of the main litigation instituted by the filing of the original bills, and that a dismissal of the cross-bill was not a final decision of the case, and so is not appealable under section 128 of the Judicial Code. That the dismissal of a mere cross-bill is not appealable until final decree in the principal suit is determined by Winters v. Ethell, 132 U. S. 207, 210, 10 Sup. Ct. 56, 33 L. Ed. 339.

[2] Appellants base the right of appeal on section 129 of the Judicial Code, which gives an appeal from an order or decree in equity granting or refusing an injunction. They contend that the dismissal of the cross-bill was a denial of the requested stay of proceedings in the two original suits, and that an injunction was thus denied within the meaning of section 129 of the Code. We think an order refusing a stay of proceedings, made in a case other than that in which the stay is operative, amounts to a denial of an injunction, under the section invoked, but that an order refusing a stay, made in the case in which the desired stay would operate, would not amount to such denial of injunction. Griesa v. Mutual Life Ins. Co. (C. C. A. 8th Cir.) 165 Fed. 48, 50, 91 C. C. A. 86. Is the bill before us a mere cross-bill, or is it substantially distinguishable from such a bill?

[3] Appellants have throughout treated the bill as a cross-bill. In the prayer for process it is so denominated; it was indorsed and filed as a "cross-bill"; its filing as such was allowed by the judge of the court below; the petition for appeal to this court is entitled in the original suits as consolidated, followed by the words, "Cross-Bill to Said Cases Consolidated as Above, No. 6746," followed by the title of the cross-suit. The demurrer is in the petition for appeal

referred to as "to the cross-bill," and the order sustaining the demur-- rer as "dismissing said cross-bill"; the assignment of errors through-- out speaks of the bill as a "cross-bill." Its dominant note is clearly such.

Questions of technical nomenclature are not specially helpful. Looking to matters of substance: The only prominent respects in which the bill we are considering adds to the case made by the answer to the original bills is, first, that in the cross-bill the alleged incorrect- ness and injustice of appellee's construction of the basis of proper rent appraisal is set out by detailed statement of specific facts and considerations, instead of by general statement; and second, that af- firmative relief is asked as already stated.

But the mere fact of prayer for affirmative relief does not make the bill other than a cross-bill, for at the time the bill was filed (what-- ever may be the case under the new general equity rule 30) the de- fendant could not obtain affirmative relief by answer unaided by cross-bill. 1 Bates, Fed. Eq. Procedure, § 377, and cases cited in note. It would seem open to appellants, under their answers to the original bills, to prove in detail all the facts alleged in the cross- bill, to the extent necessary to show actual conflict of claims as to the basis of rent appraisal, and actual conditions affecting the propriety of the respective bases and the alleged injustice of appellee's con- tention. But if any doubt exists as to the sufficiency of the answer in that regard, amendment is of course open.

Again, comparing the bill in question with the bills in the original suits, it will be noted that the only difference which can be thought controlling is that appellants' bill states the reason for the failure of the appraisers to agree, asserts the incorrectness of appellee's construc- tion of the basis of rent appraisal which should be adopted, denies the impracticability of agreement if appellants' construction of prop- er rental basis is judicially determined, and asks the court to make such adjudication and to restrain further proceedings in the original suits to the extent necessary to permit such appraisement under the rules so fixed by the court.

The considerations to which we have referred are not overcome by the facts that diversity of citizenship conferred jurisdiction for an original bill, that there was prayer for process (which accorded with proper practice under cross-bills—see Washington Railroad v. Brad- ley, 10 Wall. 299, 302, 19 L. Ed. 894), or that the bill was filed under a separate number. Indeed, such method of filing would not unnat- urally be had, in view of the fact that when the cross-bill was filed appellants' petition for a consolidation of the two original suits and for repleading therein had not been granted.

Appellants cite a number of authorities which recognize a distinc- tion between a pure cross-bill, filed simply as matter of defense, and one seeking affirmative relief as to other matters than those brought in suit by the bill. Some of these authorities hold (and this illustrates the independent nature of the latter class of cases) that a dismissal of the original bill would not, in such cases, operate to dismiss the cross-bill. We find nothing in the principle so announced opposed to

the conception of the bill in question as a mere cross-bill, because we think the additional matter introduced by the cross-bill cannot properly be said to be matter collateral to that presented by the original bills, or that the affirmative relief sought is (to quote the language of appellants' counsel) "so far severable from and independent of the suit brought by the original bills that the cross-cause is not to be considered as being the same cause as that in which the stay was to operate." The character of cross-bill is not taken away by the mere statement therein of facts not contained in the original bill, so long as such additional facts are germane to the matters embraced in the original suit. The rule is that:

"If the plaintiff in the original bill does not fully state all the facts and circumstances connected with the subject-matter in controversy, but omits facts which, if alleged, would show a right in a defendant, entitling him to relief against either the plaintiff or a codefendant, such omitted facts, however extended and voluminous, may be stated by the defendant in a cross-bill, and the appropriate relief demanded." 1 Bates, Fed. Eq. Procedure, § 376.

It is true that the dismissal of a cross-bill is a denial of the affirmative relief asked by appellants, and if the present appeal is dismissed, and, on appeal taken after final decree on the merits, the appellate court should conclude that the cross-bill was improperly dismissed, it might be necessary to send the case back for further proofs and hearing. But such evil is necessarily incident to the dismissal of a cross-bill, in advance of final hearing on the merits of the original suit.

We are constrained to hold that the bill in question is in effect a pure cross-bill, that the stay asked for was a stay in a suit in which it would operate, and that its dismissal was therefore not the subject of appeal, in advance of final decision in the original suits.

The appeal is therefore dismissed.