## WHITEMAN v. FEDERAL LIFE INS. CO.
### No. 88.

District Court, W. D. Missouri, W. D.
Feb. 16, 1939.

John W. Hudson, of Kansas City, Mo., for plaintiff.

J. Francis O'Sullivan, of Kansas City, Mo., for defendant.

OTIS, District Judge.

This is the first motion of its kind that has been presented to me as a judge of this court. I had, of course, given some study, I must admit it has been slight study, to Rule 56, Rules of Civil Procedure for District Courts, 28 U.S.C.A. following section 723c, under which the motion is presented. I think such a motion should be sustained only in a very clear case, a case in which there is no doubt as to how some essential question should be resolved, such an essential question as that when it is resolved adversely to one of the parties, that party cannot prevail.

If there is any question, the resolution of which is doubtful, that is, any question of fact, then that question ought not to be decided and cannot be decided upon the hearing of such a motion as this motion. The parties are entitled to a jury trial, if they desire it, upon such essential questions of fact as are in the case, unless, indeed, they agree as to what the facts are.

In this case there are several possible questions that seem to me to be, as I consider them now, at this stage, almost one sided. Certainly the plaintiff, to prevail in this case, must show that the death of the insured was accidental within the meaning of that word as it is used in the policy. I should think it would be extremely difficult to show that a death which was immediately caused by cerebral hemorrhage, even if it could be shown that cerebral hemorrhage might result from exposure to fluctuating temperatures, was an accidental death. I doubt if any case in which it has been held that that kind of a death is an accidental death can be found in the books. That does not mean, of course, that it might not be so held. It would seem to me to be most difficult to show that that kind of a death was an accidental death, but I would not be prepared now to say that it could not be done. It is surprising what sometimes may be shown by evidence.

It seems to me that it would be extremely difficult for the plaintiff to show that cerebral hemorrhage might result from the exposure of the person dying from it to fluctuating temperatures and that the exposure to fluctuating temperatures was accidental. I understand, of course, that plaintiff here says that he would show that the air conditioning apparatus on at least one of the cars in each of the trains upon which the insured was working was disabled and, because it was disabled, the temperature was not what it would have been if the apparatus had been working properly. Of course, if plaintiff is able to show that, then he will be able to show that the fluctuating temperatures were the result of accident. But he would not be able even then, I think, to show that the injury to the insured was the result of accident. The insured purposely and voluntarily and deliberately and willingly went through this train and he went into those cars in which the temperature was abnormal, and he knew the temperature was abnormal when he went into the cars, or shortly after he went into them he could have ascertained that fact.

I think it would be quite a heavy burden to show that the change in the blood pressure of the insured was due to any accident, even if it is possible for the plaintiff to show that the apparatus was disabled, the apparatus which controlled the temperature. I would not be prepared now to say that he might not be able to show that.

Such a motion as this should only be sustained if under the conceded and admitted facts, or facts indubitably established by the pleadings and affidavits, the case could not be submitted to the jury if the case were tried. I am compelled to the conclusion that this is such a case. I think it is very much to the advantage of the plaintiff that that conclusion is reached at this kind of hearing. The judgment of the court, if erroneous, can be reversed without all of the expense of a trial, without a great record having been made to be carried up.

I think this is a case in which, conceding the facts to be what counsel for the plaintiff says they are, the case could not be submitted to a jury if the case actually were in trial.

Now, I shall develop that thought and state the reasons for that conclusion and when I have finished I will hear counsel further, because if I have made a mistake, I will correct it now.

This contract of insurance is a contract which, like every other contract of insurance, must be construed most favorably to the insured. That may not be exactly a correct statement of the rule, but the rule is substantially that. It does not affect that rule that the premium paid is small. The theory of the rule is that the contract was written by the company and that, if there are ambiguities in the contract, the most favorable construction to the insured must be taken. But ambiguities must not be read into a contract which do not exist there.

Now, the question which has been raised by counsel for the defendant, the first question that I will consider in this connection, is whether this contract covers this kind of situation. Here it is admitted by counsel for the plaintiff, the pleadings support that admission and the facts undoubtedly were, that Mr. Whiteman, the insured, was a conductor on the Santa Fe Railroad, in the employ of that company, the Santa Fe Railroad Company.

The contract says that it will "cover injuries sustained through external, violent and accidental means by the wrecking or disablement of any passenger vehicle or passenger car operated by a common carrier in or on which the insured is traveling. This includes passengers or employees on street cars, elevated trains, public buses, taxicabs, railroad cars, steam boats or public elevators (excluding elevators in mines and employees of steam railroads and steam boats while on duty.)" The insured, Mr. Whiteman, it is conceded, was a conductor on the Santa Fe Railroad. The petition alleges that it was in that capacity that he was injured, that he was injured while he was performing his functions as a conductor on railroad cars and in railroad trains.

It seems to me to be beyond possibility of controversy that this contract, as I have read it, excludes from its benefits any injury—admitting that it be an injury and admitting that it is accidental—sustained by one while he was functioning as an employee of a steam railroad. It says so in so many words, there is no ambiguity about it. It is not quite correct to say, as counsel argued, that there is one clause which says an employee on a railroad car is included and another clause which says that he is excluded. It is *all one* clause, the exclusion is a parenthetical provision in the clause, not a separate and independent clause at all.

The only question that remains in that connection—Mr. Hudson argued it—the only question which he suggests is that this insured, Mr. Whiteman, was performing his functions as a conductor on some occasions on trains drawn by steam locomotives and on some occasions on trains drawn by Diesel operated locomotives, which are locomotives, as I understand it, electrically propelled, the electricity being manufactured on the locomotives by a gasoline operated motor dynamo.

Now, what I think the conclusive answer to that argument is, is this: This parenthetical clause, reading "excluding elevators in mines and employees of steam railroads and steam boats while on duty," does not say that such employee shall be excluded only when they are actually working on a train drawn by a steam locomotive. It excludes employees of steam railroads while on duty, so the only question is, is the Santa Fe Railroad a steam railroad within the meaning of that phrase "steam railroads."

I take judicial notice that the Santa Fe Railroad is a steam railroad. Moreover, the pleadings and affidavits show it. A steam railroad undoubtedly means—and I will never believe that to the parties to this contract it means anything else—undoubtedly means any of those great transcontinental railroads or railroads operating in interstate commerce, on which, on the whole, the motive power is steam and

which, when they came into existence, were entirely operated by steam locomotives. I may be wrong about that conclusion. If I am, my error easily can be corrected, but it seems to me to be self-evident that that is what is meant by the phrase "steam railroad," and that this insured was an employee of a steam railroad and that he was injured, if he was injured at all by an accidental injury, while he was so employed, and that, therefore, he is expressly excluded, his injuries expressly are excluded by the very terms of the contract. Concerning those terms there is no ambiguity.

I would think also that it is almost equally clear, although not quite so clear, that the mere accidental interference with the operation of the air cooling apparatus on a car is not a "disablement" of the car as a passenger vehicle. I would not think that the breaking out of a window glass, which would have the same effect upon the temperature in the car as disablement of the air cooling apparatus, would be a "disablement" of the passenger car. That, however, is not quite so clear to me as the earlier conclusion I have stated.