FISHMAN v. TETER et al.
No. 8083.

Circuit Court of Appeals, Seventh Circuit.

Feb. 9, 1943.

Bernard J. Brown, of Chicago, Ill., for appellant.

Vincent O'Brien and John M. Baker and Defrees, Fiske, O'Brien & Thomson, all of Chicago, Ill., for appellees.

Before SPARKS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, a resident of the city of Detroit, Michigan, filed his complaint against the defendants, who at one time were members of a bondholders committee to recover $20,000 damages, the par value of certain real estate bonds, alleged to have resulted from the wrongful acts of the defendants, taken in pursuance of a conspiracy between the Chicago Trust Company and the members of the bondholders committee. The defendants interposed an affirmative defense and moved for summary judgment against the plaintiff under Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The District Court sustained the motion and entered a judgment for costs against the plaintiff. From that judgment, this appeal is prosecuted.

The complaint alleged that the Chicago Trust Company is the named trustee in a trust deed dated April 1, 1926, executed by Jacob S. and Reva Friedman, which was given to secure the payment of $175,000 evidenced by bonds, and that on July 3, 1931, the Trust Company and the members of the bondholders committee entered into a conspiracy to secure the deposit of the bonds and by that means obtain the management and control of the property for the defendants' enrichment. The specific acts alleged to have been done in pursuance of the conspiracy are: that defendants misappropriated $95,000 rents collected and $4,677.98 borrowed, by pledging bonds deposited, or that they negligently permitted said sums to be dissipated; that the Trust Company and Central Republic Trust Company, as successor trustee, acquired title to the property through a partial foreclosure and the purchase of a tax deed; that with the knowledge and connivance of the committee, the Trust Company and Central permitted the title to be transferred to the Reconstruction Finance Corporation to apply on a personal indebtedness of Central; that the bondholders committee and the City National Bank and Trust Company, as successor trustee, wrongfully paid

$12,441.30 to one Albers, successor receiver of Central, on account of the personal indebtedness of Central; that had the committee notified the bondholders and secured their united action, a tenant could have been secured at a net rental of at least $800 per month, the property being worth $100,000; that the committee permitted the property to be sold at a foreclosure note for $17,500; and that the defendants have not accounted or reported to the bondholders for their acts prior to December 20, 1938.

The only question we are asked to decide is whether the judgment finds support in the pleadings and the affidavits attached to the motion for summary judgment.

■■ In the consideration of the question, we agree that the motion should be sustained only where there is no doubt as to how some essential question should be resolved, such an essential question as that when it is resolved adversely to one of the parties, that party cannot prevail. Whiteman v. Federal Life Ins. Co., D.C., 1 F. R.D. 95. In other words, it was for the court to determine, if the evidence contained in the affidavits was orally submitted to the court, whether the evidence justified submitting the case to the jury.

■ The plaintiff insists that his complaint set forth a cause of action, that the answers of the defendants raise triable issues of fact, and that the District Court was not justified in concluding that "no bona fide issue exists between the parties." Consequently, we must determine if there is a genuine issue as to any material fact. Fletcher v. Krise, 73 App.D.C. 266, 120 F.2d 809, 811.

The record discloses that the defendants filed their respective answers to plaintiff's unverified complaint, and on the hearing in support of the motion, filed affidavits, which affidavits and answers showed that the defendant City National Bank had not become successor trustee until April 1, 1935; that the defendants never collected any rents and never managed or had possession of the real estate; that default having occurred in the payment of bonds and coupons due October 1, 1931, Central, on October 13, 1931, declared all of the outstanding bonds immediately due by filing its complaint in the Superior Court of Cook County, Illinois, to foreclose the lien of the trust deed; that on March 8, 1932, Central took possession of the property and operated it as trustee until July 11, 1934, when possession was taken by Thomas D. Nash, who had been appointed tax receiver by the Circuit Court of Cook County, Illinois, and continued to operate the property and apply the net rents on account of taxes until possession thereof was surrendered in 1939 to the purchaser at the foreclosure sale; that the charge of misappropriation or negligent dissipation of funds had been either adjudicated adversely to plaintiff or was pending undisposed of in the foreclosure suit; that plaintiff knew by April 8, 1935, that neither the City National Bank nor the committee operated the property and collected the rents therefrom, but that it was in possession of the County Treasurer as tax receiver, who applied the net rents on taxes; that plaintiff was a party to each of said proceedings, and that his action in this case was not commenced until September 5, 1940, more than five years after the conspiracy is alleged to have been entered into and more than five years after the alleged wrongful acts occurred.

Concerning the acquisition of the title by the Reconstruction Finance Corporation, the affidavits show that pursuant to the provisions of the Friedman trust deed, the Trust Company, between April 1, 1929, and April 1, 1931, advanced the sum of $37,255 to the holders of bonds, and held the bonds uncancelled. The Trust Company thereupon, as before noted, filed its complaint to foreclose the trust deed for its own benefit. A decree of foreclosure and sale was entered; pursuant to the decree, the property was sold and the sale approved, and on January 5, 1932, a certificate of sale was issued to Central, which had succeeded to the right of the Trust Company. The certificate of sale, being the property of Central and not trust property, was pledged to the Reconstruction Finance Corporation for a loan made to that bank by the Reconstruction Finance Corporation. Thus, the acquisition of the title by the Reconstruction Finance Corporation was before City National Bank became trustee, and more than five years before the present suit was commenced.

As to the tax deed, the facts disclosed show that on October 9, 1930, the Trust Company expended $7,454.09 for the purchase of a tax sale certificate. The trust deed gave the trustee the power to make such a purchase to protect the property and provided that the trustee should have a prior lien on the trust property to secure

the amount so expended. Albers, as receiver of Central, had a prior lien on the mortgaged property for the amount advanced for the purchase of the tax sale certificate; consequently, after the master's sale of the property, the amount advanced by the Trust Company for the purchase of the tax sale certificate was repaid to Albers.

The affidavits also disclose a recitation of facts completely exonerating the defendants of the remainder of the specific acts charged in the complaint.

Giving effect to the evidence contained in the affidavits, it seems clear that there is no genuine issue as to any material fact that could be submitted to a jury. We therefore conclude that the District Court did not err in sustaining the motion.

Affirmed.