**FEDERAL GLASS COMPANY,**
Appellant,

v.

**Samuel LOSHIN, et al., Appellees.**

No. 23226.

United States Court of Appeals,
Second Circuit.

Motion Submitted Oct. 4, 1954.

Decided Dec. 3, 1954.

Clark, Chief Judge, dissented.

Irving Levine, Danbury, Conn., for the motion.

Wiggin and Dana, New Haven, Conn., and Corbett, Mahoney & Miller, Columbus, Ohio (Thew Wright, Jr., New Haven, Conn., of counsel), for appellant.

Before CLARK, Chief Judge, and L. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The defendants move to dismiss an appeal, taken by the plaintiff from an order that denied its motion for a summary judgment in an action to enjoin the defendants (a) from copying the plaintiff's trade name and corporate title, (b) to compel them to account for any profits, and (c) to pay damages. (The complaint included a prayer both for a permanent injunction and for an injunction pendente lite). The plaintiff's motion came on to be heard after answer upon numerous affidavits filed by both parties, and upon the plaintiff's answers to interrogatories · put by the defendants. Judge Smith denied it in a written opinion, 126 F.Supp. 737, substantially for the reason that the plaintiff had not proved that its trade name had become widely enough known in the defendants' market before the defendants had themselves begun business. Both parties agree that the order was interlocutory; their difference is whether it is nevertheless within the meaning of § 1292(1) of Title 28 U.S.C.A., as an order "refusing" an injunction. The decisions are not uniform. We held in Raylite Electric Corp. v. Noma Electric Corporation, 2 Cir., 170 F.2d 914, that an appeal lay from such an order, and the Fifth Circuit did the same in International Forwarding Co. v. Brewer, 181 F.2d 49. On the other hand the Third Circuit in Morgenstern Chemical Co. v. Schering Corp., 181 F.2d 160, examined the question with much learning and dismissed the appeal, and it has followed that decision in a later case, Hook v. Hook & Ackerman, Inc., 213 F.2d 122; and Mr. Moore accepts their view.[1] We agree that, as Judge Hastie said in Morgenstern Chemical Co. v. Schering Corp., supra [181 F.2d 161], our decision was made "without analysis of the problem"; owing to the fact that we mistakenly thought that the question did not demand analysis.

Section 1291 provides for appeals from final judgments of all sorts, necessarily including an appeal from a final judgment denying a permanent injunction. Section 1292 allows appeals from four different kinds of interlocutory orders,

---

1. Moore, Federal Practice, Vol. 6, pp. 2321, 2322.

of which the first is those "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." If these words be read literally, they appear to us indubitably to cover the denial of a motion for a permanent injunction, regardless of what may be the procedure or grounds of the moving party. Indeed, we do not understand that those, who deny any appeal, think otherwise; they base their interpretation upon the theory that the decision does not settle, and indeed does not even tentatively decide, anything about the merits of the claim; all it does is to hold that, upon the facts as shown, the cause must await a trial. Even were that so, it scarcely seems an adequate reason for disregarding language so unconditional as that of the section; but we do not wish to rely upon that. Under Rule 56(c), 28 U.S.C.A., to be granted a summary judgment, the moving party must show, not only that there is no "genuine issue as to any material fact," but also that he "is entitled to a judgment as a matter of law." If the decision is based upon these later words, it is obvious that a denial may finally settle a great deal, for usually a later judge will accept the law already laid down in the same action by an earlier judge. Moreover, to reach such a decision the "discretion of the chancellor" may be "invoked"; "equitable considerations" may be "weighed"; or the "conclusion" may be "reached with respect to the equity of the claim that a restraint should be imposed." But, even when the denial is because there is a "genuine issue as to any material fact," the decision is not confined to deciding that the claim must await a trial, although that of course is one of its results. Subdivision (c) requires the judge to pass upon "the pleadings, depositions, and admissions on file, together with the affidavits"; and subdivisions (d) and (e) not only provide that the affidavits on both sides "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"; but also that so far as may be possible all facts shall be decided even though the motion be denied. We cannot escape the belief that the decision involves much more than that it will be better to await a trial; and this is borne out by a substantial body of decision that the question is the same as that raised by a motion to direct a verdict in an action tried to a jury.[2] For example, in Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967, the Supreme Court said: "But at least a summary disposition of issues of damage should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party."

It is of course true that the motion is not a substitute for a trial, against the possibility of which courts—ourselves especially—have been solicitous to protest. There always remains the high hurdle over which the plaintiff must leap, who would secure such a judgment: i. e. the record, as it comes before the court, is of necessity limited to evidence that can be put into writing or contained in exhibits; and, as we have never tired of saying, what is left out may be, and frequently is, the most important part. Besides, at least in actions triable to a jury, the handicap is greater even than this; for the court must refuse to decide any issues whose answer admits of reasonable doubt. Therefore, to say, even though the denial has been because there was a "genuine issue of fact," that nothing is decided, and that nothing can be settled, appears to us an untenable generalization. That everything is not decided is certainly no objection, else denials of preliminary injunctions would also be ex-

**2.** Fishman v. Teter, 7 Cir., 133 F.2d 222, 223; Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 2 Cir., 147 F.2d 399, 405; Dewey v. Clark, 86 U.S. App.D.C. 137, 180 F.2d 766, 772; Hurd v. Sheffield Steel Corp., 8 Cir., 181 F.2d 269, 271.

cluded, and § 1292(1) would be altogether nullified.

Finally, although a preliminary injunction gives the plaintiff relief until the trial, it insures him of nothing more, and he cannot arrange his affairs upon the basis of any protection after the trial. That uncertainty, which may last over a year, may be nearly as serious as the absence of any protection at all. It appears to us therefore that the considerations that presumably moved Congress in 1895 [3] to grant appeals from interlocutory denials of preliminary injunctions— i. e. because it was unfair to leave suitors unprotected pending trial—should be deemed to apply to denials of permanent injunctions. The original omission of any mention of these is readily accounted for by the fact that it was not until 1938, when the New Rules went into effect, that it was possible to move for summary judgment in a Federal Court. Although we are impressed by the high authority of those who take the opposite view, we are not persuaded that we should change our original ruling; and the motion will be denied.

Motion denied.

FRANK, Circuit Judge (concurring).

1. Plaintiff's complaint prayed both a preliminary and a final injunction. Its motion sought the relief which it asked in its complaint. When a plaintiff, without seeking summary judgment, makes a motion for preliminary injunction, if the judge refuses to grant it, because he considers insufficient affidavits offered by plaintiff, an appeal of course lies under 28 U.S.C. § 1292. I think there should be no different conclusion merely because plaintiff seeks the preliminary injunction by means of a paper which plaintiff calls a motion for summary judgment.

A contrary conclusion, by sheer ritualism, would waste time. For plaintiff, the next minute after the denial of the summary judgment motion, could present the same papers unchanged except for a new label, "Motion for a preliminary injunction." For that reason, I disagree with Morgenstern Chemical Co. v. Schering Corp., 3 Cir., 181 F.2d 160, where the court said at page 162: "Nothing has occurred in or as a result of the denial of the motion [for summary judgment] which precludes plaintiff from seeking a temporary injunction in accordance with established procedure if he believes immediate injunctive relief is necessary and proper."

2. Ordinarily an order denying a summary judgment is not appealable. It is suggested that the consequence of our ruling here will mean that, if only a plaintiff includes in his complaint a prayer for a preliminary injunction, any order denying a summary judgment will become appealable, and that thus the courts of appeal will be faced with many frivolous appeals. But many an appeal from a denial of a motion, explicitly labeled a motion for preliminary injunction, is frivolous—because of the trial judge's wide discretion in such matter— and receives short shrift when the appeal is heard on the merits.

3. The case for appealability here, even as to the denial of a final injunction, is peculiarly strong and exceptional. For the judge did not refuse to grant such an injunction on the ground that there was a triable issue of fact, but on the basis of his legal conclusion that, even taking the evidence as if presented at a trial, plaintiff had not shown that it was entitled to such relief.

CLARK, Chief Judge (dissenting).

As the opinion emphasizes, the decision herein is based upon a very literal reading of the statute, 28 U.S.C. § 1292(1), without looking to the consequences.[1]

---

3. 28 St. at L. 666.

1. Even a literal reading may suggest doubts; the continued stress in the title and four subsections of § 1292 upon "*interlocutory*" orders or decisions—contrasting with the *"final"* decisions of § 1291—points to the grant or refusal of a remedy pending the litigation, rather than a refusal to grant the final judgment asked for.

Were the consequences to be considered, it would be apparent that as now ruled a plaintiff, by merely adding to his prayers for relief one for an injunction—preliminary, interlocutory, or final, it makes no difference which—may cause any denial of his pre-trial motions to be immediately appealable. This gives him practically unlimited discretion, since under the now merged law-equity procedure it is never difficult to frame a plausible demand for additional compulsive relief; moreover, plausibility can hardly be held essential, as erroneous claims must be reviewed equally with sound ones. Thus the conjunction of a statute originally enacted sixty years ago, with an obvious and a different purpose, and procedural rules newly devised nearly fifty years later, with their own clear-cut objectives, results in a substantial overturn of the historic and consistently reiterated federal principle against "piecemeal appeals."

In words which have now become classic, we have been admonished that "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." Cabell v. Markham, 2 Cir., 148 F.2d 737, 739, affirmed Markham v. Cabell, 326 U.S. 404, 409, 66 S.Ct. 193, 90 L.Ed. 165. In the full spirit of this precept the Third Circuit, in five decisions representing the unanimous views of at least six of the judges comprising that distinguished tribunal, has reached what to me is a convincing interpretation of this statute. Morgenstern Chemical Co. v. Schering Corp., 3 Cir., 181 F.2d 160, 162; Albert v. School Dist. of Pittsburgh, 3 Cir., 181 F.2d 690, 691; American Airlines v. Forman, 3 Cir., 204 F.2d 230; Hook v. Hook & Ackerman, Inc., 3 Cir., 213 F.2d 122, 128;

District 65, Distributive, Processing and Office Workers Union of New York and New Jersey v. McKague, 3 Cir., 216 F.2d 153. Quoting from the Supreme Court's interpretation of the statutory purpose "to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties," Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528, it points out that in neither instance was this the situation upon the denial of the summary judgment, but rather it was as though the case had been continued for additional evidence. Thus under this interpretation we properly look to the nature of the decision, instead of relying merely on an arbitrary principle of complete appealability quite foreign to traditional federal policy.

It will not do, in my judgment, to rest upon an analysis and conclusion that denial of summary judgment must always mean more than the Third Circuit finds in the cases before it. While such a denial may so operate when the trial judge so intends, there is nothing in the stated rule to compel this result; and the actual trend—under appellate prodding in which my colleagues have been prominent participants—is surely the other way. As we can see from the trial court opinions, the nearly universal denial of all summary judgments, except upon adjudication of issues of law, is customarily reached by repeating appellate admonitions against "trial by affidavits" and relying upon the judicial gloss that the "slightest doubt" requires denial of the motion.[2] In view of this, it is significantly unreal to find any elements of finality in this rather uniform treatment of the summary judgment.

In the light of this developing tradition, appellant's most cogent argument seems to me to be that Judge Smith actually did decide so much of the merits as to provide the requisite degree of sub-

2. See cases and authorities cited in the Advisory Committee's Note to the proposed amendment to F.R.C.P. 56(e), Preliminary Draft, May 1954, pp. 50–52, and Wright, Amendments to the Federal Rules, 7 Vand.L.Rev. 521, 546(1954).

stantial adjudication for operation of the principle adduced by the Third Circuit. Since his opinion does afford some basis for the argument I should have been disposed to acquiesce in silence, notwithstanding some misgivings on the facts and in the interest of supporting an operable rule, had our conclusion been based upon this analysis. But since the sweep of our decision is such as—in my judgment—to prove inoperable in actual practice in view of its unlimited invitation to interlocutory appeals, and since I believe it will require restatement and restriction in due course, I feel I should go on to express and define my misgivings. These are based upon doubt of a real indication, by either appellant or Judge Smith, that this case signalizes any departure from the ordinary tentative and merely postponing nature of a denial of summary judgment. Significantly appellant made no attempt to procure or to show the need of an injunction pendente lite, beyond the purely formal prayer of its complaint. And Judge Smith actually suggests the need he finds for more evidence when he says that the material before him does not show general public knowledge of plaintiff's trade name and adds, "At least the exhibits *now before us* would not demonstrate it." (Italics supplied.) A litigant essaying an appeal should show more than this, I believe, to take his case out of the general run of summary-judgment denials.[3]

There is a paradox about our result here which cannot fail to intrigue. Our past decisions critical of the summary judgment suggest that rarely, if ever, will we be prepared to reverse the action of a trial judge in calling for a full trial. Hence we are now inviting a considerable flood of appeals which, like the one before us, seem obviously doomed to failure.

The suggestion in the concurring opinion that adherence here to the traditional federal practice against interlocutory appeals would result somehow by sheer ritualism in a waste of time is not convincing. That a plaintiff who has shown no real interest in an injunction pendente lite should be stimulated thereto by a denial on the merits of his demand for final judgment does not seem likely. But if he is, then we should hear him; my position, like that of the Third Circuit, is not that we should limit the Act of Congress, merely that we should not expand it.[4] Nor do I see much relief in the "short shrift" which a frivolous, albeit encouraged, appeal is expected to receive; no matter how short the shrift, it amounts to a full-dress appeal involving useless time and expense of litigants and delay and calendar-clogging for courts. Steps extending free interlocutory appeals are unwise, as the committee report, made after an unusually full canvass and accepted by the Judicial Conference of the United States, see Report 1952, 203, stated, in condemning such legislation which "would unduly encourage fragmentary and frivolous appeals with the evils and delays incident thereto." Nor should they be fashioned through mere interpretation.

3. In Morgenstern Chemical Co. v. Schering Corp., supra, 3 Cir., 181 F.2d 160, 163, Judge Hastie acutely draws attention to the close interconnection of the motion to dismiss under F.R.C.P. 12(b) with the motion for summary judgment which it usually becomes on submission of "matters outside the pleading," and points out the direct authority under F.R.C.P. 12(d) for deferring determination of the former motion until the trial.

4. Possibly the door is opened too wide here and there should be some limitation, as by the certificate of the trial judge; cf. F.R.C.P. 54(b) and the legislation recommended by the Judicial Conference, Report 1953, 27. But that is a matter of legislative policy.