PETER PAN FABRICS, INC. and Henry Glass & Co., Plaintiffs-Appellants,

v.

DIXON TEXTILE CORPORATION, Defendant-Appellee.

No. 213, Docket 25935.

United States Court of Appeals Second Circuit.

Argued Feb. 11, 1960.

Decided March 30, 1960.

On Application for Hearing In Banc May 18, 1960.

Bernard A. Helfat, Helfat & Helfat, New York City (J. Nathan Helfat, New York City, on the brief), for plaintiffs-appellants.

Harry Price, New York City (Samuel Jaffe, New York City, on the brief), for defendant-appellee.

Before MOORE, Circuit Judge, and SMITH and HERLANDS, District Judges.

J. JOSEPH SMITH, District Judge.

Plaintiffs sued for infringement of copyright on an ornamental design,

known as "Byzantium," printed upon textiles. A preliminary injunction against copying was granted, and plaintiffs moved, with supporting affidavits, for summary judgment to encompass a permanent injunction against copying and reference to a master for determination of damages. Judge Levet denied summary judgment on the ground that the finding of originality in the order granting a preliminary injunction was not determinative and that the affidavit submitted in support of the motion is insufficient to dispose of this issue prior to trial. A motion for rehearing was denied without opinion.

■ Defendant-appellee contends that the orders denying summary judgment are not appealable because not final; appellant that they are appealable as orders denying injunctions. 28 U.S.C. § 1292(1). The matter is settled in this circuit in favor of appealability by Raylite Electric Corp. v. Noma Electric Corp., 2 Cir., 1948, 170 F.2d 914, Federal Glass Co. v. Loshin, 2 Cir., 1954, 217 F.2d 936, and United States v. New York N. H. & H. R. R. Co. et al. (Glenmore et al. v. Ahern et al.), 2 Cir., 276 F.2d 525, with which my brothers are in accord. Were the matter one of first instance in this circuit the writer would incline to the view that they are not appealable, for they are clearly interlocutory in nature, involving a pre-trial order as to issues to be tried. This is the view of the third circuit. Hook v. Hook & Ackerman, Inc., 3 Cir., 1954, 213 F.2d 122; Morganstern Chemical Co. v. Schering Corp., 3 Cir., 1950, 181 F.2d 160; 6 Moore Federal Practice, 2nd Ed., p. 2321, and see dissenting opinion of Judge Clark in Federal Glass Co., v. Loshin, 2 Cir., 1954, 217 F.2d 936, 938, and the views of Judges Clark and Medina, Federal Glass Co. v. Loshin, 2 Cir., 1955, 224 F.2d 100, 101. We proceed to consideration of the merits.

■ Concededly, the finding on the issue of originality was not concluded by the ruling on the ex parte motion for preliminary injunction. However, when the motion for summary judgment, with accompanying affidavits, placed before the court a state of facts, which, uncontradicted in any material respect, required a finding of originality, trial of the issue was not required, and summary judgment should not have been denied on that ground. The plaintiffs had engaged a Parisian designer to design from rough sketches furnished him a design Byzantine in motif. This design plaintiffs registered as a reproduction of a work of art under 17 U.S.C. § 5(h), for which the Copyright Office issued Certificate H 7290. The design was printed on goods with the copyright notice repeated on the selvage every 19 inches, and the goods were sold to dress manufacturers. While the basis of the sketches appears to have been suggested by or perhaps taken faithfully from ancient art forms, their incorporation into a combined design by the Parisian designer is clearly sufficiently original to satisfy the originality requirement of the copyright law. See Alfred Bell & Co., Ltd. v. Catalda Fine Arts Inc., 2 Cir., 1951, 191 F.2d 99. (Mezzotint engravings of old masterpieces, paintings in the public domain, proper subjects of copyright.) Originality, not novelty, is the test. Fred Fisher, Inc. v. Dillingham, D.C.S.D.N.Y. 1924, 298 F. 145. There was no genuine issue as to any facts material to the question of originality.

Defendant contends that besides originality there were three other genuine factual issues raised by the pleadings and affidavits which were not reached by Judge Levet in view of his ruling on originality. These were failure to comply with the notice requirement of the copyright law, 17 U.S.C. § 10, whether the defendant in fact copied plaintiffs' design or developed a similar design independently, and damages. There appears to be no issue of fact as to the printing of the notice on the selvage, and its legal sufficiency has been upheld in Peter Pan Fabrics, Inc. v. Martin Weiner Co., 2 Cir., 274 F.2d 487, 490, in the absence of showing that notice could have been embodied in the design without impairing its market value.

Since Judge Levet did not consider other issues in view of his ruling on the issue of originality, no finding was made as to whether notice could have been applied to the dresses or embodied in the design without impairing its market value. Publication under the Martin Weiner Corp. case, supra, is considered to have occurred on sale of the printed goods to the dress manufacturers, and notice at that time is to be held constructive notice to all dress manufacturers, provided the notice was sufficient. In that event, a copier acts at his peril if he takes the design from a finished dress. Such a result may well be considered necessary to carry out the Congressional intent to give copyright protection to reproductions on textiles of works of art. Weiner teaches that absence of notice is a defense, with the burden on the copyist to show it could have been embodied in the design without impairing its market value. "In the case of a deliberate copyist, * * * the absence of 'notice' is a defence that the copyist must prove, and * * * the burden is on him to show that 'notice' could have been embodied in the design without impairing its market value." L. Hand, J. in Peter Pan v. Martin Weiner. It does not appear likely that defendant in the case at bar can show that notice could have been embodied in the design without impairing its market value, but there is nothing in the pleadings or plaintiffs' affidavits on this issue. The status of the Weiner case is such that the question of whether "notice" could have been embodied in the design without impairing its market value remains open for proof in the proceeding for permanent injunction and other relief. In the case at bar, permanent injunction and damages are sought by the motion for summary judgment. The Feerst affidavit alleges lack of notice. The possibility of embodying notice in the design has not been otherwise raised or disposed of on the pleadings or affidavits. The issue remains open for proof.

The next remaining issue, that of copying, also presents difficulty,

since the affidavit of Feerst, dated August 14, 1959, in opposition to the motion, contains the following language:

"I am familiar with the process by which defendant initiated, developed and carried out its design. I state categorically that it was not a copy, in whole or in part, of the expression in the plaintiffs' design.

"I further state categorically, and will prove on the trial, that the defendant's design was the product of the defendant's independent work, and in no way involved any, let alone substantial, appropriation of plaintiffs' copyright.

"There are innumberable examples of this type of design, available freely to all in various sources, including many source books in the public domain.

\* \* \* \* \* \*

"Defendant in fact was an innocent party and the design and similar designs were common on the market during the latter part of 1958 and it would not appear that there is any liability that would warrant either a summary judgment procedure or reference to a master.

"In respect to the Kabro dress, this dress was devoid of notice and although the same theme may have been applied to defendants' fabric as in this Kabro dress, it was an original with defendant."

There was, however, in Wilner's affidavit the following:

"I am advised by plaintiffs' attorneys, Helfat and Helfat, Esqs., 32 Broadway, New York 4, New York, that in the course of the deposition of Martin G. Feerst, defendant's president, taken on June 8, 1959, defendant admitted that it was the manufacturer of the textile annexed to the complaint as Exhibit 2; that defendant manufactured or caused to be manufactured a total of 69,-500 yards of the said textile; that of said 69,500 yards, all but 8,-900 yards were sold by it between

November 3, 1958 and November 20, 1959; that the idea for and the inspiration of the design printed on defendant's said textiles was a dress purchased from the department store of Bloomingdale Bros., New York, on October 23, 1958, which dress was used as a model for defendant's design and bore a label indicating that it was manufactured by Kabro of Houston; that defendant made no inquiry as to the origin of the goods which were used in said dress and served as a model for defendant's goods; and that defendant received notice of the copyright from plaintiffs by letter dated November 18, 1959 a copy of which is annexed hereto as 'Exhibit B' and which was probably received by defendants on November 20, 1958." (Obviously the dates November 18, 1959 and November 20, 1959 should be 1958 since the affidavit was sworn to in July 1959.)

"Kabro of Houston is a customer of plaintiff Henry Glass & Co. who purchased a substantial quantity of textiles bearing the copyrighted design from plaintiff. Since the material and design of the textile in the Kabro of Houston dress is identical with Exhibit 1 annexed to the complaint herein and since Kabro of Houston has informed me that it did not purchase any textile of this or similar design from any source other than plaintiff, the material in the Kabro of Houston dress copied by defendant is clearly plaintiff's material."

The striking similarity between the fabric exhibits in evidence, the failure to name other sources than the plaintiffs' design, or to controvert the allegations as to the Kabro dress, make it quite likely that the defense to the charge of copying is a sham. The pleadings set up a general denial. The affidavits attempt to do likewise. Were the moving affidavits proper in form and substance, the conclusory general allegations of non-copying would be insufficient to raise a genuine issue for trial. Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469, 473. Wilner's affidavit was not, however sufficient under Rule 56(e). The rule requires supporting affidavits to be made on personal knowledge. Automatic Radio Mfg. Co. v. Hazeltine Research, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312, rehearing denied 340 U.S. 846, 71 S.Ct. 13, 95 L.Ed. 620. In two important respects, as to Feerst's claimed admissions relative to the model for defendant's design and the lack of other similar designs in Kabro hands, Wilner swore, not on personal knowledge, but on information from plaintiffs' attorney and from Kabro of Houston.

In the state of the pleadings and proof before him, without more, Judge Levet would have been justified in denying summary judgment. Had he reached the questions of notice and copying, however, he might have been able by interrogation of counsel under the rule or by permitting the filing of the deposition or of affidavits in proper form, to determine whether these issues are genuine or merely sham, and if sham, to dispose of them without trial. Since the ground on which denial was based (lack of originality) appears to us untenable, and there appears a possibility that the defects in proof on other grounds might have been cured had Judge Levet proceeded to interrogate counsel as contemplated by Rule 56, 28 U.S.C.A., and to consider the other claimed issues, we reverse and vacate the order denying summary judgment and remand for further hearing and consideration of the motion in the light of this opinion.

On Application for Hearing in Banc.

PER CURIAM.

Judge Clark having asked the Court to give in banc consideration to the question whether or not the decision of the district court was appealable, and due consideration having been had thereon, the motion for an in banc hearing is denied.

Before LUMBARD, Chief Judge, and CLARK, WATERMAN, MOORE, and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge (concurring).

I disagree with the result reached by the panel. See my dissent in Glenmore v. Ahern, 2 Cir., 276 F.2d 525, 547. Moreover, I do not agree that for all time "this matter is settled in this circuit in favor of appealability." I do join the majority, however, in denying Judge Clark's request for in banc consideration. Nothing would be gained by granting in banc at this time.

CLARK, Circuit Judge (dissenting).

Here is yet another example of the continuous muddle in our circuit with respect to interlocutory appeals. This is an unusual recognition of such appeals. In a copyright infringement action involving a work of art reproduced on textiles, plaintiff sought and was granted a preliminary injunction pending suit. Thereafter it moved for summary judgment on affidavits, and now has appealed from the denial of its motion. In this classic case of *nonadjudication,* my brothers have now accepted the appeal, holding themselves bound by the doctrine of Federal Glass Co. v. Loshin, 2 Cir., 224 F.2d 100, and have reversed with directions for further consideration of the summary judgment motion and with suggestions as to how the gaps in proof may be filled upon further hearing. This has happened in a circuit well known in the past for its condemnation of "trial by affidavits" and its general insistence upon full-dress trials. Both the decision and the opinion seem bound to increase the confusion as to appealability already manifest. At the earliest possible moment I requested a hearing by the full court; since that has been denied by majority vote, I feel I should point out through the only means available the inadequate bases in precedent and policy for the decision in the hope of assisting in eventual clarification of issues so uniquely bothersome in this circuit.

In thus accepting the binding force of the Loshin rule I believe the court has erred in several particulars, as pointed out in my dissenting opinion in Glenmore v. Ahern, 2 Cir., 276 F.2d 525, 549, which appears not to have been made available to the panel before decision.[1] First, it has not counted noses accurately; there seems a practically even split among the active judges. And this may be a generous count, since the three judges voting to follow the Loshin principle have not had occasion to act in the same case; as there is doubt in any event how far the principle is to be pressed in a given case—does it apply, for example, to an order of continuance?—it would be dangerous to prophesy as to future decisions. Next the court has overlooked several recent decisions—following Supreme Court leadership—holding that calendar orders in an equity action are not appealable as denials of injunction. Then it overlooks a number of important recent holdings against appealability obviously in point, though a separate issue was not made as to the denial of an injunction. Finally it ignores the practically unanimous course of decision in other circuits and in state courts following the federal rules, as well as the informed views of text writers.[2] This is too heavy a load of solid professional view to be lightly cast aside. For documentation I refer to the citations in my dissent in Glenmore v. Ahern, supra.

Perhaps even more important than this impressive weight of precedent are the reasons of policy behind it. A district judge's orders advancing a case to trial ought not to be critically examined and re-examined by the cumbersome method of appeal before he has approached the stage of adjudication. Indeed, I do not understand that anyone desires to press the Loshin principle to its logical conclusion; some pre-trial steps surely remain in the discretion of the trial judge. The result is that we are having a kind of selective and discrimi-

1. This expands with additional citations Judge Waterman's original dissent filed Jan. 29, 1960, 276 F.2d 547.

2. Only a single early and unclear case from another circuit affords any support for the Loshin rule.

natory harassment of trial judges, quite unpredictable in its scope and incidence. I believe this an intolerable burden for us, an improper and uncertain interference with trial court discretion, and a confusing invitation to indiscriminate appeals in the future—all contrary to settled federal law against piecemeal appeals. I hope we can soon return to this sound federal view.