869 F.2d 116
 Fed. Sec. L. Rep. P 94,198
In re DREXEL BURNHAM LAMBERT INCORPORATED, Drexel Burnham
Lambert Group Incorporated, Michael R. Milken,
Lowell J. Milken, Cary J. Maultasch, and
Pamela R. Monzert, Petitioners.
 Docket No. 88-3060.
 United States Court of Appeals,
Second Circuit.
 Feb. 21, 1989.
 
 1
 MESKILL, Circuit Judge, concurring in Judge PIERCE's concurrence in the denial of rehearing in banc:
 
 
 2
 Although I was not a member of the panel hearing this matter, I concur with the sentiments expressed by Judge Pierce, who was a majority member of the panel, in his concurrence in the denial of rehearing in banc.
 
 
 3
 PIERCE, Circuit Judge, with whom MESKILL, CARDAMONE and MINER, Circuit Judges, join, concurring in the denial of rehearing in banc:
 
 
 4
 I write in concurrence with the majority which has denied rehearing in banc. The dissenting opinion is correct in implying that such statements are infrequently made. However, the publication thereof makes it appropriate to state another view.
 
 
 5
 Whether the district judge's impartiality might reasonably be questioned on the facts and circumstances present in this case should not be assayed on a record that is so antiseptic as to cause this court to be oblivious to the serious charges of judge-shopping made by respondents in their briefs and submissions. Although no findings have been made regarding this aspect of the case, it cannot be gainsaid that the question of alleged judge-shopping is a significant contextual matter. The presence of the judge-shopping issue in the case places upon this court the burden of scrutinizing with exceptional care the petitioners' efforts to have the district judge disqualified from continuing to preside over this litigation.
 
 
 6
 Most of the subject litigation was assigned to Judge Pollack in 1986 and 1987, and substantial pretrial activity had occurred by September 1988 when the SEC filed a 184-page civil complaint against Drexel in a civil enforcement action; it too was assigned to Judge Pollack. None of these actions involves Palais Royal, Inc. or the judge's wife, a major shareholder.
 
 
 7
 Soon after the SEC action was assigned to Judge Pollack, Drexel, at Bain's instance, took on the funding burden of Bain's purchase of Palais Royal. Drexel then engaged in an undisputed course of conduct with respect to Bain's acquisition of Palais Royal, all the while knowing that the subject litigation was assigned to Judge Pollack. Thus, the respondents in effect contend that Drexel, by its own actions, set the stage to seek the removal of the judge who had presided over much of this litigation for approximately two years. Are litigants to have the power by their own actions to veto the assignment of judges? Additionally, in considering the merits, the panel majority was confronted with the reality that Drexel owed no duty whatsoever to Palais Royal or to the district judge's wife, and it therefore concluded that Drexel's participation in the financing role it chose to assume was too remote from Bain's acquisition of Palais Royal to require Judge Pollack's disqualification. Under these circumstances, would a reasonable observer believe that Judge Pollack's refusal to recuse himself created an appearance of impropriety? Isn't the exceptional grant of a writ of mandamus to be made only when there is a clear and indisputable right to it? See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 18, 103 S.Ct. 927, 938, 74 L.Ed.2d 765 (1983).
 
 
 8
 More problematic is the district judge's accusation of professional lapses by the firm representing a petitioner. In this demonstration of sensitivity to the question of whether counsel had transcended acceptable professional bounds, the district judge came perilously close to the indistinct line beyond which recusal is required.
 
 
 9
 However, two grounds militated against requiring his disqualification based on this episode: to begin with, the caselaw draws a distinction between a judge's conduct toward counsel and his conduct toward counsel's client. See In re Cooper, 821 F.2d 833, 841 (1st Cir.1987); Rosen v. Sugarman, 357 F.2d 794, 798-800 (2d Cir.1966). Although hostility directed at counsel can reach bounds which warrant relief if it appears that the client will be harmed, in the panel majority's view such is not the case here. Moreover, this conclusion is supported by the fact that no final determination was or will be made by Judge Pollack regarding the charges levelled at counsel. Rather, in accordance with the district court's rules, the issue has been referred to that court's chief judge and to the court's appropriate disciplinary panel for their consideration and presumably for ultimate determination. See Rule 4(i), General Rules, Rules for the United States District Courts for the Southern and Eastern Districts of New York (1987).
 
 
 10
 Most importantly, in the event that Judge Pollack should demonstrate partiality in handling this litigation, and should it result in the denial of a just and fair outcome for Drexel, such bias would be a weighty issue to be raised by Drexel on a direct appeal, especially since the applicable standard of review would no longer require Drexel to show that it had a "clear and indisputable" right to relief, the standard which is applicable to petitions for writs of mandamus but not to direct appeals.
 
 
 11
 I concur in the court's majority view that this is not a proper case for in banc review.
 
 
 12
 MINER, Circuit Judge, with whom MESKILL, CARDAMONE and PIERCE, Circuit Judges, join, concurring in the denial of rehearing in banc:
 
 
 13
 Merely to record my vote to deny rehearing in banc would be to permit the "expression of views" in the dissenting opinion to go unchallenged. It seems to me that the sensitive nature of the issues before us compels a reasoned rebuttal of the dissenters' conclusions. I therefore write separately to give my reasons for concurring in the majority determination.
 
 
 14
 In banc review is warranted "(1) when consideration by the full court is necessary to secure or maintain uniformity of its decisions, or (2) when the proceeding involves a question of exceptional importance." Fed.R.App.P. 35(a). In suggesting in banc review in this case, petitioners have neither demonstrated a lack of uniformity in our decisions relating to recusal of district court judges nor identified a legal question of transcending importance. Rather, the panel majority has applied well-settled rules to the specific facts of this case in deciding that the petition for writ of mandamus should be denied. Neither the panel dissenter nor the in banc dissenters contend that the applicable rules should be changed. Accordingly, the standard for in banc review simply has not been met.
 
 
 15
 To determine whether Judge Pollack's impartiality might reasonably be questioned, see 28 U.S.C. Sec. 455(a), the panel majority properly reviewed as an "objective observer," Liljeberg v. Health Services Acquisition Corp., --- U.S. ----, 108 S.Ct. 2194, 2203, 100 L.Ed.2d 855 (1988), the facts and circumstances surrounding the sale of Palais Royal stock by Mrs. Pollack to a buyer whose purchase was financed by Drexel Burnham Lambert Inc. That review revealed:
 
 
 16
 Mrs. Pollack has had no business or other dealings with Drexel; she will receive no money from Drexel; and Drexel is not essential to the completion or success of the transaction. Moreover, there is no nexus, direct, indirect or otherwise, between the civil suits pending before Judge Pollack and Mrs. Pollack's interest in Palais Royal.
 
 
 17
 In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1314 (2d Cir.1988).
 
 
 18
 It seems quite unexceptional to draw from these findings an objective conclusion that no appearance of partiality would be provided by Judge Pollack's continued service in the actions against Drexel. It certainly cannot be said that Judge Pollack, by reason of Drexel's financing of the Palais Royal deal, has any personal prejudice regarding the parties or personal knowledge of the facts underlying those actions, see 28 U.S.C. Sec. 455(b)(1), or that he or his wife have any financial interest that could be affected by the outcome of those proceedings, see 28 U.S.C. Sec. 455(b)(4). Nor were these conclusions affected when Drexel put up some of its own money to close the deal and thereafter acquired an equity in the purchaser, all of which was contemplated by the panel majority. The "flow of substantial sums" to Mrs. Pollack from Drexel, referred to by the in banc dissenters, was much too indirect and circuitous a movement to lead reasonable, objective and impartial observers along the path taken by my dissenting colleagues.
 
 
 19
 That Judge Pollack referred to a grievance committee charges of professional misconduct involving an alleged breach of his wife's confidence on the part of certain attorneys representing a Drexel officer is not an indication of "personal bias or prejudice concerning a party," 28 U.S.C. Sec. 455(b)(1) (emphasis added). Neither does it present a situation in which the Judge's impartiality might reasonably be questioned, see 28 U.S.C. Sec. 455(a). A judge who reports a violation of the Code of Professional Responsibility, whether involving himself, a member of his family or someone else, should not face recusal for that reason. All lawyers are encouraged to bring to the attention of the appropriate authorities perceived violations of the ethical standards of the bar. See Model Rules of Professional Conduct Rule 8.3 (1983); Model Code of Professional Responsibility DR1-103(A) (1980). It would be much too easy a matter for an attorney to engage in some minor breach of the Canons of Ethics directed against the Judge or a member of the Judge's family if recusal could be forced by that means. If recusal is not warranted where the judge holds an attorney in criminal contempt, see Rosen v. Sugarman, 357 F.2d 794, 799-80 (2d Cir.1966), it should not be warranted where there is merely a referral to an appropriate authority to determine if there has been any misconduct. Involved in that referral here is only one of nine firms representing petitioners, and the parties to the underlying litigation can have no reasonable basis to question Judge Pollack's impartiality because he has raised, but not resolved, a question of professional ethics.
 
 
 20
 My dissenting colleagues say that the litigation continues under a "cloud" because the panel majority applied mandamus standards and the recusal questions may again be presented on plenary appeal. However, the panel has ruled on all the significant issues pertaining to recusal that have been raised up to this point. Its conclusions merely were "reinforced" by the stringent requirements for success on a mandamus petition. 861 F.2d at 1316.
 
 
 21
 Finally, a majority of the active judges of this court have determined to deny rehearing in banc. Under such circumstances, it ill behooves the dissenters to suggest that it would be an act of "judicial statesmanship" for the district judge to request that the case be reassigned--a request that we now have decided he need not make.
 
 
 22
 JON O. NEWMAN, Circuit Judge, with whom KEARSE, GEORGE C. PRATT, and ALTIMARI, Circuit Judges, join, dissenting:
 
 
 23
 We respectfully dissent from the denial of rehearing in banc. Though a statement of reasons for such a dissent is often neither needed nor useful, we believe an expression of views is appropriate in this instance.
 
 
 24
 The Court has been asked to rehear the panel decision denying a petition for mandamus seeking recusal of the District Judge in this case. See In re Drexel Burnham Lambert Inc., 861 F.2d 1307 (2d Cir.1988). Two circumstances bear upon the question of recusal:
 
 
 25
 1. The Judge's wife is to receive approximately $30 million in connection with her sale of stock in a family business, and the financing of the stock purchase is being arranged by Drexel Burnham Lambert Inc., one of the parties in litigation now pending before the Judge.
 
 
 26
 2. The Judge has referred to a grievance committee charges of professional misconduct by some of the lawyers in the pending litigation based on allegations that they have breached the confidence of the selling shareholders, including the Judge's wife.
 
 
 27
 The reasons why the first circumstance requires recusal have been forcefully set forth in the panel dissenting opinion of Judge Lumbard. At the time of the panel opinion, Drexel's role was solely that of financier for the purchaser. It is now alleged by counsel for two of the petitioners that Drexel's role in the now completed transaction has increased since the Judge's ruling: Drexel put up nearly $200 million of its own money as a bridge loan and directly and indirectly acquired 8.5% of the equity in the purchaser. The flow of substantial sums of money from Drexel, the litigant before the District Judge, to the Judge's wife, is now more direct than before.
 
 
 28
 The second circumstance places the Judge in the role of adversary, on behalf of his wife, to counsel now appearing in the litigation before the Judge. Though a judge need not and should not recuse when, solely in his capacity as a judicial officer, he observes attorney conduct that warrants inquiry by an appropriate disciplinary body and calls such conduct to the body's attention, see In re Cooper, 821 F.2d 833, 842-44 (1st Cir.1987) (recusal not warranted where trial judge condemns attorney's conduct as violation of Code of Professional Responsibility); cf. Rosen v. Sugarman, 357 F.2d 794, 799-800 (2d Cir.1966) (recusal not warranted where trial judge held attorney in criminal contempt for courtroom conduct), the present situation involves the District Judge, not solely as a presiding judicial officer, but as the husband of a principal victim of the attorneys' alleged ethical violation.
 
 
 29
 These are extraordinary circumstances, raising profound questions as to the standards for recusal and the role of this Court in maintaining the highest standards of judicial propriety in this Circuit. Some of us believe that rehearing in banc is warranted by at least one of these circumstances and some believe it is warranted by both circumstances. All of us believe that rehearing in banc should be ordered.
 
 
 30
 The panel that denied the mandamus petition applied the strict standards for mandamus and concluded that circumstances known to the panel at the time of its decision did not demonstrate that "clear" and "indisputable " right to mandamus that is required for issuance of the writ. See In re Drexel Burnham Lambert Inc., supra, 861 F.2d at 1312 (emphasis in original). Even though that decision will not be reconsidered in banc, serious questions concerning recusal remain in the case and will be available for plenary review by the panel that will consider any appeal that may be taken from the final judgment. It would be unfortunate if this important litigation were to continue under such a cloud. As with any in banc vote, the denial of rehearing does not necessarily signify agreement with the panel opinion. See Peter Pan Fabrics, Inc. v. Dixon Textile Corp., 280 F.2d 800, 805 (2d Cir.1960) (Waterman, J., concurring in denial of rehearing in banc). Thus, the fact that a majority of the active judges of this Court has voted not to rehear the mandamus ruling in banc is not necessarily an indication that a majority of this Court believes that the District Judge's continued participation is proper.
 
 
 31
 We urge the District Judge, now that his recusal ruling has been upheld upon the narrow review appropriate to a mandamus petition, not to jeopardize the outcome of this litigation by continuing a role that poses substantial risks of ultimate reversal. Several factors warrant his reconsideration. First, there have been developments since his ruling that strengthen the case for recusal. Second, there is an impending settlement of a portion of the litigation. Third, the Judge's ruling reveals that in one important respect he misconceived the reasons for recusal. He stated the reasons to be that Drexel would not want "to bear the burden" of a favorable, though deserved, ruling on the merits of the case and that an unfavorable ruling might be perceived as attributable to a failure of the stock sale to happen. SEC v. Drexel Burnham Lambert Inc., No. 88 Civ. 6209 at 6 (S.D.N.Y. Oct. 17, 1988). Though rejecting these concerns as "far-fetched," id., he failed to consider the entirely valid concern that no litigant should have to endure the risk that a judge, encountering circumstances that show a basis for partiality, might bend over backward to rule against the litigant on close questions in order to demonstrate impartiality. Cf. Cooke v. United States, 267 U.S. 517, 539, 45 S.Ct. 390, 396, 69 L.Ed. 767 (1925) (substitution of trial judge sometimes warranted in criminal contempt matters to avoid risk that judge might "bend backward" in making ruling).
 
 
 32
 An alternative to reconsideration would be for the Judge to seek the advice of the Advisory Committee on Codes of Conduct, the committee of the United States Judicial Conference authorized to provide advice concerning the Code of Judicial Conduct for United States Judges.
 
 
 33
 Under all the circumstances, it would be an act of judicial statesmanship for the District Judge to request that the litigation now be reassigned.