RHONE–POULENC SPECIALITES CHIMIQUES, and Rhone-Poulenc Inc., Plaintiffs-Appellees,

v.

SCM CORPORATION, Defendant-Appellant.

Appeal No. 84–1557.

United States Court of Appeals, Federal Circuit.

Aug. 6, 1985.

Hal D. Cooper, Jones, Day, Reavis & Pogue, Cleveland, Ohio, argued for defendant-appellant; with him on the brief were Kenneth R. Adamo, Cleveland, Ohio, and Samuel Friedman, SCM Chemicals Division of SCM Corp., of New York City, N.Y., of counsel and Steven A. Werber, Commander, Legler, Werber, Dawes and Sadler, of Jacksonville, Fla., of counsel.

Norman H. Stepno, Burns, Doane, Swecker & Mathis, Alexandria, Virginia, argued for plaintiffs-appellees; with him on the brief were Ronald L. Grudziecki, and Eric H. Weisblatt, Alexandria, Va., of counsel.

George L. Hudspeth and Thomas F. Harkins, Jr., Mahoney, Hadlow & Adams, Jacksonville, Fla., of counsel.

Vincent E. DeFelice, Rhone-Poulenc, Inc., Monmouth Junction, N.J., of counsel.

Before RICH, BALDWIN, and KASHIWA, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the July 20, 1984, Order of the U.S. District Court for the Middle District of Florida, Jacksonville Division, denying the motion of SCM Corporation (SCM) for stay of proceedings pending arbitration pursuant to 9 U.S.C. § 3. We vacate and remand.

## Background

On January 1, 1979, Rhone-Poulenc Specialites Chimiques, a French corporation, and Rhone-Poulenc Inc. (Rhone or RPI) entered into an exclusive license agreement (agreement) with SCM, whereby SCM was granted the exclusive right to practice a chemical process for the isomerization of linalol to make a "geraniol product," comprising geraniol and nerol, using vanadium, a transition metal, as a catalyst according to claim 2 of U.S. patent No. 3,925,485 ('485), and to sell the geraniol product. The agreement provides similar rights in know-how applicable, but not patented, to that claimed chemical process.

The agreement provides two separate royalty schedules: (1) A minimum royalty schedule regardless of production; and, (2) A running percentage royalty based on SCM's actual production.

Subsequently, SCM was assigned a later-issued Kane patent No. 4,254,291 ('291) which discloses a process for the catalytic isomerization of linalyl borate esters, rather than with alcohols as claimed in the '485 patent, also with a vanadium catalyst.

On July 16, 1982, SCM informed Rhone of its desire to renegotiate the agreement in light of the '291 patent, claiming that "SCM from a technical standpoint now is in a position to operate completely outside the scope of the claims [specifically claim 2] in RPI's ['485] patent[,]" and that it would proceed following the '291 process because it produced a more efficient yield. SCM also tendered the minimum royalty due under the agreement theorizing that no additional royalty was owed since it was not operating in accordance with claim 2.

In response, on August 23, 1982, Rhone notified SCM that the '291 patented process could not be practiced without infringing

the '485 patent and, therefore, SCM was still liable for a running percentage royalty under the agreement. This is a principal issue in this suit.

Several months of correspondence ensued in which SCM offered to continue to pay the minimum royalty due, and culminated in SCM's tender of royalties for that percent of the product, specifically 26.8%, that would have been obtained had it used the allegedly less efficient '485 process instead of the process of its '291 patent.

On July 5, 1983, Rhone advised SCM that its "deliberate and willful withholding of the total amount of royalties properly due ... constitutes a flagrant and material breach" of the agreement and terminated the agreement.

On July 15, 1983, Rhone filed this suit in district court alleging: (1) breach of contract; (2) misappropriation of trade secrets; and (3) patent infringement.

Rather than filing an answer, SCM filed the motion at issue based on the agreement's arbitration provision which provides in pertinent part:

8.3 Any controversy or claim arising out of or relating to this Agreement or the breach thereof, shall, unless amicably adjusted otherwise, be settled by arbitration in Florida in accordance with the rules of the International Chamber of Commerce....

The district court denied SCM's motion to stay on two alternative grounds: (1) the controversy inherently involves "the non-contract issues of the scope, validity, and infringement of U.S. Patent No. 3,925,485 ... [and does] not arise out of or relate to the Agreement"; and (2) SCM, by its conduct "in unilaterally withholding royalty payments and demanding renegotiation of the agreement ... has thereby lost, waived or abandoned any right to arbitration."

## OPINION

### Jurisdiction

Rhone moved on September 21, 1984, to dismiss SCM's appeal to this court "for lack of appellate jurisdiction," arguing that the district court's denial of a stay to permit arbitration was neither a final decision nor an appealable interlocutory order. This court denied that motion on October 5, 1984.

This court has subject matter jurisdiction, as discussed below, over any final decision of the district court based in whole or in part on 28 U.S.C. § 1338. 28 U.S.C. § 1295(a)(1). That jurisdiction includes appeals from certain interlocutory orders, such as those granting or refusing injunctions. 28 U.S.C. § 1292(c)(1).

The Eleventh Circuit, in which this case originated, has held that the denial of a stay to permit arbitration is appealable because it "is an interlocutory order refusing an injunction under 28 U.S.C. § 1292(a)(1)." *Dimenstein v. Whiteman,* 759 F.2d 1514, 1515 (11th Cir.1985). In *Dean Witter Reynolds, Inc. v. Byrd,* —— U.S. ——, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Court accepted without comment the concept that denials of stays to permit arbitration are final and appealable decisions. *See Byrd v. Dean Witter Reynolds, Inc.,* 726 F.2d 552, 553 (9th Cir.1984).

Rhone's complaint, in count III, alleges that SCM infringes the '485 patent and demands: (1) injunctive relief; (2) treble damages pursuant to 35 U.S.C. § 284; and, (3) attorney fees pursuant to 35 U.S.C. § 285. The district court has subject matter jurisdiction over the complaint based in part on 28 U.S.C. § 1338(a). This court has appellate jurisdiction over an appeal under 28 U.S.C. § 1295(a)(1), including pendent jurisdiction to consider the counts for breach of contract and misappropriation of trade secrets.

At this point in the litigation, this court has before it only SCM's motion to stay the proceedings pending arbitration based on the arbitration provision in the license agreement referred to in count I for breach of contract. Accordingly, at this time we shall not address either count II or count III even though our jurisdiction is founded

on count III. Procedurally similar is *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 223 USPQ 1074 (Fed.Cir.1984), in which the court held that it had pendant jurisdiction over a copyright claim, even though the patent claim was not yet ripe for appeal, stating:

> This court's potential subject matter jurisdiction over any appeal ... continues to be determined by the complaint ... under which the jurisdiction of the district court was and is based in part on § 1338.

747 F.2d at 1432–33, 223 USPQ at 1081. *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 1562, 225 USPQ 121, 123 (Fed.Cir.1985) ("the party who brings suit is master to decide what law he will rely upon ... [and] that '[j]urisdiction generally depends upon the case made and the relief demanded by the plaintiff'." [Citations omitted.] ).

### The "Controversy"

■ The district court found the controversy involved the allegedly non-contract issues of "the scope, validity, and infringement" of claim 2 of the '485 patent, and that the parties did not *intend* to submit those issues to arbitration.

Accordingly, this court must "determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, —— U.S. ——, ——, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985) (The Court went on to state, "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").

The issues of scope and infringement should be considered together as they are not separate and distinct issues. The claim defines the scope, or limits, of the right to exclude conferred by the patent. Infringement takes that analysis, involving the construction and interpretation of the claim,

one step further to determine whether the claim so construed "reads on" the accused process. Such is the case at hand where, semantics aside, the dispute between the parties is whether SCM is or is not operating within the scope of claim 2 of the '485 patent so that a percentage royalty under the agreement, rather than just a minimum royalty, is due.

Although the dispute involves claim interpretation, it *arises* out of the agreement. The agreement licensed SCM to use the chemical process of claim 2 and sell the product in exchange for royalty payments, which depended completely upon whether SCM was operating within or outside the scope of claim 2.

We hold that the determination of the scope and infringement of the '485 patent are the quintessence of the agreement and that the parties intended such central determinations to be included within the scope of its broad arbitration clause. The district court's holding to the contrary is clear error.[1]

As to the validity of the '485 patent, the district court did not need to address that issue as it was not before the court. SCM has filed no answer to the complaint, and therefore has not raised invalidity as a defense to Rhone's charge of patent infringement. Rather, SCM moved the district court for a stay pending arbitration on the issue of whether or not it was acting within the scope of claim 2, i.e., infringing it.

We therefore hold that the district court erred in holding that the dispute does not arise out of or relate to the agreement.

### Waiver

■ The district court stated,

SCM's conduct in unilaterally withholding royalty payments and demanding renegotiation of the Agreement is inconsistent with any intent to avail itself of

---

1. Consistent with the intent of the parties when they entered into the contract here, the right to arbitrate has since been guaranteed by enactment of 35 U.S.C. § 294.

arbitration of the present dispute. SCM has thereby lost, waived or abandoned any right to arbitration. *Burton-Dixie Corp. v. Timothy McCarthy Construction Co.,* 436 F.2d 405, 407–408 (5th Cir. 1971).

First, in support of its determination that SCM unilaterally ceased payment of royalties, the district court relied on a "July 18, 1982 [sic]" letter, dated July 16, 1982, from SCM to Rhone. As brought out by SCM, the letter did not indicate a total withholding of royalty payments. Rather, SCM stated it was "prepared to recognize RPI's efforts [in developing the technology] by continuing to pay the minimum royalties specified...." Assuming SCM was, as it alleged in the letter, operating completely outside of claim 2, this tender represented the entire amount of royalties owed under the agreement.

Second, *Burton-Dixie* is readily distinguishable from the case at hand on the basis of its facts. The Burton-Dixie Corporation (B–D) engaged the McCarthy Construction Company to construct a building. Soon after completion, B–D noticed a leak in the roof of the building. McCarthy attempted, over a period of three years, to make temporary repairs until it was determined that the only real solution would be to install a new roof. At that point, McCarthy disclaimed liability. B–D employed a third party to replace the defective roof and sued McCarthy for the cost of its new roof. McCarthy contended that the suit was barred in law because of the contract's Article 20 which provided, "All question [sic] arising under this Article shall be decided by the Architect subject to arbitration...."

In deciding that McCarthy had waived its right to insist upon submission of the dispute to arbitration the court stated,

[A]t no time before answering the complaint ... did McCarthy demand that the matter be submitted to the architect or to arbitration. Even when Burton-Dixie filed suit against McCarthy, McCarthy did not attempt to invoke the arbitration provision in the contract. In its answer to the complaint, McCarthy *did not ask the court to stay proceedings* pending arbitration.... [Emphasis ours. 436 F.2d 408–409.]

In the present case, SCM did not file an answer and instead did exactly what the court found McCarthy had not done, i.e., filed a motion for stay rather than an answer. We hold that SCM did not waive its right to arbitrate merely by waiting until after Rhone filed a complaint to request arbitration of the dispute and that the district court was clearly erroneous in ruling to the contrary.[2]

### Conclusion

We hold that the district court erred both in finding that the dispute in issue did not arise out of the agreement and that, in any event, SCM had waived its right to arbitration. Accordingly, the Order of the district court is vacated and this case is remanded to the district court for further proceedings consistent herewith.

**VACATED AND REMANDED.**

---

**2.** The parties have raised the issue of the proper standard of review of the district court's determination of waiver in view of the inconsistent case law of the Fifth Circuit as shown by *Southwest Indus. Import & Export, Inc. v. Wilmod Co.,* 524 F.2d 468, 470 n. 3 (5th Cir.1975) ("We consider the question of waiver to be a conclusion of law...."), and *Howard Hill, Inc. v. George A. Fuller Co.,* 473 F.2d 217, 218 (5th Cir.1973) (Waiver "depends upon the facts of each case and must be determined by the trier of facts," citing *Burton-Dixie,* supra.) We need not address that inconsistency as we hold that under either standard of review the district court's findings of waiver cannot stand.