Elizabeth Nye WOODARD, Miles Cogley Nye, Jr., and the Kendall Company, Appellants,

v.

SAGE PRODUCTS, INC., Appellee.

Appeal No. 87–1016.

United States Court of Appeals, Federal Circuit.

May 4, 1987.

Melvin F. Jager, Willian, Brinks, Olds, Hofer, Gilson & Lione, Chicago, Ill., argued, for appellee. Gerson E. Meyers, Dressler, Goldsmith, Shore, Sutke & Milnamow, Ltd., Chicago, Ill., of counsel and Richard A. Kaplan, Willian, Brinks, Olds, Hofer, Gilson & Lione, Chicago, Ill., of counsel.

Jack C. Goldstein, Arnold, White & Durkee, Houston, Tex., argued, for appellants. John D. Norris and Patricia N. Brantley, Arnold, White & Durkee, Houston, Tex., of counsel.

Before MARKEY, Chief Judge, FRIEDMAN, RICH, DAVIS, SMITH, NIES, NEWMAN, BISSELL, and ARCHER, Circuit Judges.

NIES, Circuit Judge.

This appeal raises the legal issue of whether the order of a federal district court granting summary judgment of non-infringement in favor of one of several defendants in a pending patent infringement suit is immediately appealable. The order is not a final judgment from which appeal may be taken under 28 U.S.C. §§ 1291 or 1295(a)(1) (1982), and the district court neither certified the issue under 28 U.S.C. § 1292(b) (Supp. III 1985) nor entered a separate final judgment under Fed. R.Civ.P. 54(b). Appellants argue, however, that this court has appellate jurisdiction under 28 U.S.C. §§ 1292(a)(1) and (c)(1) (1982 & Supp. III 1985) because the order granting summary judgment effectively denied appellants' prayer set forth in their complaint for permanent injunctive relief against the dismissed defendant. Having considered the matter *in banc*, we conclude that, under *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), an interlocutory order that, in effect, denies an injunction is appealable under section 1292(a)(1) only if such order causes serious, if not irreparable, consequence and can be effectually challenged only by immediate appeal. Appellants failed to satisfy those requirements. Accordingly, we grant appellee's motion to dismiss for lack of appellate jurisdiction. We deny appellee's motion for attorney fees for a frivolous appeal.

I

Elizabeth Nye Woodard and Miles Cogley Nye, Jr., owners of U.S. Patent No. 3,654,638 (the Nye patent) and Kendall Company, licensee thereunder, (hereinafter collectively "Woodard") filed a notice of appeal from an order of the United States District Court, Northern District of Illinois, Eastern Division, granting partial summary judgment in favor of Sage Products, Inc., one of several defendants in a pending patent infringement suit.

The following procedural history of the subject controversy is set out by Woodard and, being generally uncontroverted, is accepted as correct for purposes of this motion to dismiss.

B. *The Nye Patent and the Parties*

The Nye patent relates to a commode pan invented by Alice Nye, who owned the patent until her death.

Plaintiffs Elizabeth Nye Woodard and Miles Cogley Nye, Jr., children of the deceased Alice Nye, have been the owners of the Nye patent since Alice Nye's death. Plaintiff The Kendall Company

("Kendall") has been the exclusive licensee under the Nye patent since 1972.

Defendants Sage Products, Inc. ("Sage"), Plastipan Industries, Inc. ("Plastipan"), and BHC, Inc. ("BHC") are *un* related corporations, each of which makes and sells *separate and distinct* allegedly infringing commode pans.

C. *The Litigation Below*

On September 4, 1981, Alice Nye— then an elderly lady who resided in Houston, Texas, and who, because of failing health, had difficulty traveling—and Kendall commenced a patent infringement action in the Southern District of Texas against distributors of Sage, Plastipan, and BHC. Subsequently, Sage, Plastipan, and BHC, bought [sic] individual declaratory judgment actions against Kendall in the Northern District of Illinois. Although she clearly was a necessary and indispensable party, Alice Nye was *not* named as a defendant in those three actions because she was not subject to venue in Illinois.

By agreement, on December 16, 1981, Alice Nye and Kendall filed the underlying patent infringement action against Sage, Plastipan, and BHC in the Northern District of Illinois, and the Texas action and the three Illinois declaratory judgment actions were dismissed. Alice Nye and Kendall's original complaint sought "a preliminary and final injunction against continued infringement" by Sage, Plastipan, and BHC. Each of the defendants counterclaimed for a declaratory judgment of invalidity and non-infringement.

After a substantial period of discovery, Sage cited three allegedly anticipatory prior art references. Based on Sage's contentions respecting those three references, Alice Nye filed a *request for reexamination*, in the Patent and Trademark Office ("PTO") on January 14, 1983.

During the reexamination, Alice Nye's health worsened, and the district court *sua sponte* dismissed the civil action without prejudice and with express leave to reinstate upon resolution of both the issue of the reexamination and the issue of Alice Nye's health. Later during the reexamination, Alice Nye died. On April 16, 1985, the PTO issued a reexamination certificate, confirming the patentability of the original four claims and adding six new claims over Sage's allegedly anticipatory prior art.

On June 4, 1985, the district court granted plaintiffs' motion to reinstate the civil action and granted leave to file an amended complaint which *also* sought "a preliminary and final injunction against continued infringement" by Sage, Plastipan, and BHC.

On September 25, 1985, Sage filed a motion for summary judgment that Sage's Model 2500 commode pan—the *only* Sage product in issue—did not infringe the Nye patent. Since Sage's other product had previously been eliminated from the litigation by stipulation, Sage's motion sought summary judgment effectively dismissing plaintiff's complaint insofar as Sage was concerned—and inherently denying plaintiffs *all* relief against Sage.

On August 27, 1986, the district court entered a memorandum opinion and order granting Sage's motion for summary judgment on grounds of non-infringement. . . .

Brief for Woodard at 6–9 (footnote omitted).

In connection with a motion for reconsideration, Woodard advised the district court that it intended to take an immediate appeal pursuant to 28 U.S.C. § 1292(a)(1) on the theory that the district court's grant of partial summary judgment was effectively the denial of an injunction in this case. The district court expressed its disagreement that the order was appealable but suspended proceedings in the case pending resolution of the appeal.

Woodard promptly filed a notice of appeal and Sage countered with a motion to dismiss for lack of appellate jurisdiction. Per Sage, the order does not fall within the narrow category of interlocutory orders which are immediately appealable under 28 U.S.C. § 1292(a)(1). In support of its interpretation of that section, Sage relied princi-

pally on the Supreme Court decision in *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). In essence, Sage argued that Woodard had no right to appeal an interlocutory order which effectively denied a permanent injunction unless Woodard showed that the order had a serious, if not irreparable, consequence that could not be effectually challenged on appeal of a final judgment. Per Sage, Woodard did not show that an immediate appeal of the subject order was necessary to prevent such harmful effects. In addition, Sage relied on the decisions of this court in *Chaparral Communications, Inc. v. Boman Industries, Inc.*, 798 F.2d 456, 230 USPQ 535 (Fed.Cir.1986); *Holmes v. Bendix Corp.*, 713 F.2d 792, 219 USPQ 6 (Fed.Cir.1983), and *Veach v. Vinyl Improvement Products Co.*, 700 F.2d 1390, 217 USPQ 97 (Fed.Cir.1983), in which interlocutory appeals under section 1292(a)(1) in purportedly similar instances were dismissed. (See discussion, Part VI, *infra.*)

Woodard responded in opposition to the motion for dismissal with the argument that, because the district court's interlocutory order was a final disposition of its claim for injunctive relief against Sage, it was immediately appealable as of right under section 1292(a)(1). Woodard relied principally on *General Electric Co. v. Marvel Rare Metals Co.*, 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408, 15 USPQ 266 (1932), and a number of circuit court decisions, almost all of which were rendered before *Carson*, to support its position that an order effectively denying a permanent injunction on the merits is immediately appealable as of right, that is, without any additional showing of harm *pendente lite*. Woodard urged that the statements in *Carson* on which Sage's interpretation of section 1292(a)(1) rests are dicta and that *Carson* did not overrule the venerable *General Electric* case. Further, while Woodard maintained that, in any event, it met the standard of *Carson* and was distinguishable from *Veach, Holmes,* and *Chaparral,* it urged the court to consider the matter initially *in banc* to clarify or overrule our cases to the extent that they conflict with *General Electric* and the substantial body of existing case law of other circuits. This court accepted the suggestion for *in banc* consideration.

## II

■■■ It is axiomatic that the initial inquiry in any appeal is whether the court to which appeal is taken has jurisdiction to hear the appeal. While in some matters of procedural or substantive law this circuit has concluded that we will follow the law as interpreted by the circuit in which the district court is located, *see, e.g., Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1439–40, 223 USPQ 1074, 1087 (Fed.Cir. 1984), such deference is inappropriate on issues of our own appellate jurisdiction. This court has the duty to determine its jurisdiction and to satisfy itself that an appeal is properly before it. We may, of course, look for guidance in the decisions of the regional circuit to which appeals from the district court would normally lie, *see, e.g., In re International Medical Prosthetics Research Assocs., Inc.*, 739 F.2d 618, 620 (Fed.Cir.1984), as well as those of other courts. However, our decision to follow another circuit's interpretation of a common jurisdictional statute results from the persuasiveness of its analysis, not any binding effect. With this understanding, we turn to the jurisdictional issues at hand.

In 28 U.S.C. § 1295(a)(1) (1982), Congress granted the United States Court of Appeals for the Federal Circuit exclusive jurisdiction, with certain exceptions not pertinent here, "of an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title...." Section 1338 gives the district courts jurisdiction over civil actions arising under any Act of Congress relating to patents, and, thus, the grant of jurisdiction to this court covers the appeals of final judgments in such cases. In addition, in connection with such cases, Congress granted this court exclusive jurisdiction by 28 U.S.C. § 1292(c)(1) "of an appeal from an interlocutory order or decree described in subsection [1292](a)...." Section

1292(a)(1) provides that appellate courts have jurisdiction of interlocutory district court orders "granting, continuing, modifying, refusing or dissolving injunctions...." Having sued Sage for patent infringement, Woodard properly sought review in this appellate tribunal if the order granting Sage's motion for summary judgment were appealable under section 1292(a)(1). *See Rhone-Poulenc Specialites Chimiques v. SCM Corp.*, 769 F.2d 1569, 1571, 226 USPQ 873, 874 (Fed.Cir.1985).

### III

The requirement found in 28 U.S.C. § 1291 (1982) that an appeal in a civil action in a federal district court can be taken only from a final decree and judgment in the suit has been a basic principle of our jurisprudence since the Judiciary Act of 1789, 1 Stat. 73, 84. In *McLish v. Roff*, 141 U.S. 661, 665–66, 12 S.Ct. 118, 119–20, 35 L.Ed. 893 (1891), the Supreme Court identified the following reasons for this policy:

> From the very foundation of our judicial system the object and policy of the acts of Congress in relation to appeals and writs of error ... have been to save the expense and delays of repeated appeals in the same suit, and to have the whole case and every matter in controversy in it decided in a single appeal.

Thus, the final judgment rule prefers the prospect of a retrial to interlocutory appeal.

In 1891, Congress created the first exception to the rule of finality with the creation of the circuit courts of appeals. Section 7 of that statute allowed an appeal from interlocutory orders in equity "granting or continuing" injunctions. 26 Stat. 826. Appeals from interlocutory orders "denying" injunctions were first allowed in 1895. 28 Stat. 666. The evolvement of this statute to the present provisions of 28 U.S.C. § 1292(a) is set out in *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 180 & n. 6, 75 S.Ct. 249, 252 & n. 6, 99 L.Ed. 233 (1955), and will not be repeated here. That opinion does advise:

> No discussion of the underlying reasons for modifying the rule of finality appears in the legislative history, although the changes seem plainly to spring from a developing need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.

348 U.S. at 181, 75 S.Ct. at 252 (footnote omitted). Similarly, in *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), the Court recognized:

> Since the procedural aspects of law deal with the practical affairs of men and do not constitute an abstract system of doctrinaire notions, Congress has recognized the need of exceptions for interlocutory orders in certain types of proceedings where the damage of error unreviewed before the judgment is definitive and complete ... has been deemed greater than the disruption caused by intermediate appeal.

369 U.S. at 124, 82 S.Ct. at 656 (citation omitted).

The present statute, 28 U.S.C. § 1292(a)(1), provides:

**§ 1292. Interlocutory decisions**

> (a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
>
> > (1) Interlocutory orders of the district courts of the United States ... or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court....

Since the order sought to be appealed here is not one in which the district court specifically addressed the grant or denial of a motion for an injunction, it is not apparent from a casual reading of the statute that the order falls within the scope of section 1292(a)(1). To support appealability of the subject order, Woodard relies on the interpretation of the statute in a series of five salient Supreme Court decisions. From those same decisions, Sage urges the opposite conclusion. We will, therefore, review them chronologically, including one

that was decided by the Court and cited by the parties after briefing.

**1.** *General Electric Co. v. Marvel Rare Metals Co.*, 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408, 15 USPQ 266 (1932)

■ In *General Electric*, an appeal was taken from an interlocutory order dismissing, for lack of venue, a counterclaim seeking an injunction for patent infringement. The court of appeals held that it had jurisdiction to review the interlocutory order under section 129 of the Judicial Code, the predecessor of section 1292(a)(1), and reversed the holding of lack of venue. Before the Supreme Court, the plaintiff-petitioner had urged that the dismissal of the defendant's counterclaim was not an order denying an injunction and was, therefore, not appealable. 287 U.S. at 433, 53 S.Ct. at 203, 15 USPQ at 267. In particular, plaintiff argued that no hearing in equity had been held on an application for injunction which the statute at that time required. The Court held that the counterclaim had alleged a cause of action for an injunction and that plaintiffs themselves brought on for hearing:

> the very question that, among others, would have been presented to the court upon formal application for an interlocutory injunction. That is, whether the allegations of the answer are sufficient to constitute a cause of action for injunction. And the court necessarily decided that upon the facts alleged in the counterclaim defendants were not entitled to an injunction. It cannot be said, indeed plaintiffs do not claim, that the dismissal did not deny to defendants the protection of the injunction prayed in their answer.

The ruling of the Circuit Court of Appeals that an injunction has been denied by an interlocutory order which is reviewable under § 129 is sustained by reason and supported by the weight of judicial opinion. *Emery v. Central Trust & Safe Deposit Co.*, 204 Fed. 965, 968. *Ward Baking Co. v. Weber Bros.*, 230 Fed. 142. *Historical Pub. Co. v. Jones Bros. Pub. Co.*, 231 Fed. 638, 643. *Naivette v. Philad Co.*, 54 F. (2d) 623.

287 U.S. at 433, 53 S.Ct. at 203, 15 USPQ at 267. Thus, the proposition is long established that interlocutory appeals are not restricted to orders that *specifically* address the propriety of the denial of an injunction. An order may be appealable under section 1292(a)(1) if it has that substantive effect.[1]

**2.** *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955)

In *Baltimore Contractors*, the next in the series, the Court again instructed that the determination of whether an order is *injunctive in nature* depends on the substance of the order, not its form. There it was held that a district court's order denying a stay of its own proceedings pending arbitration was not the refusal of an interlocutory injunction. 348 U.S. at 184, 75 S.Ct. at 254. The Court held that such an order was merely a step in controlling the course of the trial, and not injunctive in nature.

**3.** *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966)

After *General Electric*, a number of courts interpreted section 1292(a)(1) (or its predecessor) expansively to encompass generally any order that could be deemed to effectually deny injunctive relief. Once an order was found to have such effect, the literal language of the section mandated a right to appeal. Other courts and jurists recognized a need to restrict the literal scope of section 1292(a)(1), and to give the statute only the scope commensurate with its original purpose and with the purpose of the final judgment rule of section 1291. In part, developments in procedures which occurred *after* enactment of the provision for interlocutory appeal prompted this latter group to reassess the sweep of earlier decisions. Summary judgment, which be-

---

1. While the interlocutory order was appealable because it was held to fall within the statutory provision permitting immediate appeal of an injunctive order, the issue decided was not injunctive relief *vel non*, but rather, the propriety of dismissal for lack of venue.

came available in the federal courts in 1938, and the merger of law and equity under the federal rules greatly increased resort to section 1292(a)(1). In *Federal Glass Co. v. Loshin*, 217 F.2d 936 (2d Cir. 1954), the majority accepted jurisdiction of an appeal of an order denying plaintiffs' motion for summary judgment on an injunctive claim. In a dissent, which later became the Second Circuit's interpretation,[2] Judge Clark pointed out the ease with which the final judgment rule could be avoided in view of the new procedures, stating:

> As the [majority] opinion emphasizes, the decision herein is based upon a very literal reading of the statute, 28 U.S.C. § 1292(1), without looking to the consequences. Were the consequences to be considered, it would be apparent that as now ruled a plaintiff, by merely adding to his prayers for relief one for an injunction—preliminary, interlocutory, or final, it makes no difference which—may cause any denial of his pre-trial motions to be immediately appealable. This gives him practically unlimited discretion, since under the now merged law-equity procedure it is never difficult to frame a plausible demand for additional compulsive relief; moreover, plausibility can hardly be held essential, as erroneous claims must be reviewed equally with sound ones. Thus the conjunction of a statute originally enacted sixty years ago, with an obvious and a different purpose, and procedural rules newly devised nearly fifty years later, with their own clear-cut objectives, results in a substantial overturn of the historic and consistently reiterated federal principle against "piecemeal appeals."

217 F.2d at 938–39. Judge Clark was persuaded that the Third Circuit's more restrictive interpretation of section 1292(a)(1),

which refused appealability of this type of order, was correct.[3] *See, e.g., Hook v. Hook & Ackerman, Inc.,* 213 F.2d 122, 101 USPQ 376 (3d Cir.1954).

Faced with a split in the rulings in the circuits, the Supreme Court in *Switzerland Cheese* held that an order which denied summary judgment to a plaintiff who had requested a preliminary and a permanent injunction in its complaint was not appealable. In so holding it stated:

> It is earnestly argued, however, that, although this order denied a permanent injunction, it was nonetheless "interlocutory" within the meaning of § 1292(a)(1) because the motion for summary judgment did service for a motion for a preliminary injunction (see *Federal Glass Co. v. Loshin, supra,* at 938) and that therefore "interlocutory" must also include a denial of a permanent injunction.
>
> We take the other view not because "interlocutory" or preliminary may *not at times* embrace denials of permanent injunctions, but for the reason that the denial of a motion for a summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial. Orders that in no way touch on the merits of the claim but only relate to pretrial procedures are not in our view "interlocutory" within the meaning of § 1292(a)(1). We see no other way to protect the integrity of the congressional policy against piecemeal appeals.

*Switzerland Cheese*, 385 U.S. at 24–25, 87 S.Ct. at 194–95 (footnote omitted; emphasis added). Thus, while the holding was very narrow, the *Switzerland Cheese* analysis rejected the broad literal reading of section

---

**2.** In *Chappell & Co. v. Frankel,* 367 F.2d 197, 200 (2d Cir.1966) (in banc), the court overruled *Federal Glass,* justifying its action on the enactment of subsequent legislation, namely, the Interlocutory Appeals Act of 1958, codified as amended at 28 U.S.C. § 1292(b) (1982 & Supp. III 1985).

**3.** Similarly, Judge Friendly, dissenting in *Stewart-Warner Corp. v. Westinghouse Elec. Corp.,*

325 F.2d 822, 830, 140 USPQ 1, 6 (2d Cir.1963), *cert. denied,* 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964), noted that the statute's literal import had become broader because of non-substantive language changes which tended "to obscure the original aim," characterizing this effect as "drafting erosion."

1292(a)(1) which had created the split in the circuits.[4]

4. *Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978)

The Supreme Court again gave a restrictive reading to section 1292(a)(1) in *Gardner*. Gardner sought to appeal the denial of a Fed.R.Civ.P. 23 class certification in conjunction with a civil rights complaint for an injunction on behalf of the plaintiff and the proposed class. The Court recognized that the "practical effect of the denial of class certification is, therefore, to refuse a substantial portion of the injunctive relief requested in the complaint." 437 U.S. at 480, 98 S.Ct. at 2453. Relying on *General Electric*, the *Gardner* petitioner argued that simply by showing that an interlocutory order had such an effect its appealability under section 1292(a)(1) was established. In holding the order *sub judice* not appealable, the Court stated:

> We cannot agree; indeed the argument misconceives both the scope of § 1292(a)(1) and the import of decisions such as *General Electric*.
>
> ... It is sufficient to note that the statute creates an exception from the long-established policy against piecemeal appeals, which this Court is not authorized to enlarge or extend. The exception is a narrow one and is keyed to the "need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Id.*, [348 U.S.] at 181 [75 S.Ct. at 252].

The order denying class certification in this case did not have any such "irreparable" effect. It could be reviewed both prior to and after final judgment; it did not affect the merits of petitioner's own claim; and it did not pass on the legal sufficiency of any claims for injunctive relief. This stands in sharp contrast to the order in *General Electric*. In that case the Court held that an order dis-

missing a counterclaim for an injunction was appealable. The order, therefore, entirely disposed of the defendant's prayer for injunctive relief; here, the order merely limits the scope of the relief that may ultimately be granted. While it may have a significant effect on the litigation, "[m]any interlocutory orders are equally important, ... but they are not for that reason converted into injunctions." *Morgantown v. Royal Insurance Co.*, 337 U.S. 254, 258 [69 S.Ct. 1067, 1069, 93 L.Ed. 1347].

437 U.S. at 480–81, 98 S.Ct. at 2453 (footnotes omitted).

5. *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)

*Carson* dealt with the refusal of a district court to accept a settlement agreement including a consent decree which provided for permanent injunctive relief. The Court held that the district court's action had the practical effect of refusing an injunction for which it cited *General Electric*, 450 U.S. at 83, 101 S.Ct. at 996, and then stated:

> For an interlocutory order to be immediately appealable under § 1292(a)(1), however, a litigant must show more than that the order has the practical effect of refusing an injunction. Because § 1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule, we have construed the statute narrowly to ensure that appeal as of right under § 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of "permit[ting] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Baltimore Contractors, Inc. v. Bodinger, supra,* at 181. Unless a litigant can show that an interlocutory order of the district court might have a "serious, per-

---

**4.** In the decision reviewed by the Court, *Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc.*, 351 F.2d 552, 554 (1st Cir.1965), *aff'd*, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), that circuit in rejecting appealability had concluded:

Furthermore, we think that the additional opportunity afforded by section 1292(b) for interlocutory appeals under controlled conditions enacted since the original decisions in the Second Circuit makes strict construction of the other sections all the more desirable.

haps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal. 450 U.S. at 84, 101 S.Ct. at 996.

In *Carson* the Court, for the first time, separated the factors which had been intertwined in its earlier analyses of appealability into individual requirements. The Court instructed that an interlocutory appeal under section 1292(a)(1) requires (a) that the order be injunctive in nature, (b) that it cause a serious, if not irreparable, consequence, and (c) that the order can be effectually challenged only by immediate appeal. It then found that the refusal of the permanent injunction in that case caused irreparable harm *inter alia* because a settlement, conditioned on the avoidance of a trial, could not be obtained after trial.

After setting forth the above standard, the Court went to great lengths to analyze its prior decisions and to fit them into the *Carson* analysis. The Court explained *General Electric* in the following passage:

> By contrast, *General Electric Co. v. Marvel Rare Metals Co.*, 287 U.S. 430 [53 S.Ct. 202, 77 L.Ed. 408] (1932), a case in which respondents sought to appeal the District Court's dismissal of their counterclaim for injunctive relief on jurisdictional grounds, concluded that the District Court's order *did* have a serious, perhaps irreparable, consequence and that it could not be effectually challenged unless an appeal were immediately taken. The Court noted that the District Court "necessarily decided that upon the facts alleged in the counterclaim defendants were not entitled to an injunction," *id.*, at 433 [53 S.Ct., at 204], and that this decision resolved "the very question that, among others, would have been presented to the court upon formal application for an *interlocutory injunction*." *Ibid.*

450 U.S. at 86 n. 11, 101 S.Ct. at 997 n. 11 (last emphasis added).

Similarly, the Court stated that the *Switzerland Cheese* order denying summary judgment, which it said fit literally within the statutory language of section 1292(a)(1), was not appealable because it was not shown

> that the order might cause them irreparable consequences if not immediately reviewed. The motion for summary judgment sought permanent and not preliminary injunctive relief and petitioners did not argue that a denial of summary judgment would cause them irreparable harm *pendente lite*. Since permanent injunctive relief might have been obtained after trial, the interlocutory order lacked the "serious, perhaps irreparable, consequence" that is a prerequisite to appealability under § 1292(a)(1).

450 U.S. at 85, 101 S.Ct. at 997 (footnote omitted).

Next, *Gardner* was reviewed and seen to be comparable to *Switzerland Cheese* in that the petitioner "had not filed a motion for a preliminary injunction" and had not alleged that the denial of her motion for class certification "would cause irreparable harm." Further, the order in *Gardner* had "no direct or irreparable impact on the merits of the controversy." 450 U.S. at 85, 101 S.Ct. at 997.

6. *Stringfellow v. Concerned Neighbors In Action,* — U.S. —, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987)

In this recent case the Court held that a district court's order denying Concerned Neighbors' motion to intervene as of right and granting that organization permissive intervention with restrictive conditions was not appealable *inter alia* under section 1292(a)(1). As an intervenor of right, Concerned Neighbors could have asserted an independent claim for injunctive and other relief. One of the conditions imposed on Concerned Neighbors as a permissive intervenor was that it could not request any relief not requested by one of the original parties. — U.S. at —, 107 S.Ct. at 1179. In rejecting the argument that section 1292(a)(1) gave a right to interlocutory appeal of the subject order, the Court held:

> Even if we were convinced that the District Court order had the effect of denying an injunction, it still would not satis-

fy § 1292(a)(1). This Court has made it clear that not all denials of injunctive relief are immediately appealable; a party seeking review also must show that the order will have a " 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal." *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 [101 S.Ct. 993, 996, 67 L.Ed.2d 59] (1981) (quoting *Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 [75 S.Ct. 249, 252, 99 L.Ed. 233] (1955)). Because we have concluded that [the intervenor] can challenge the limitations on its participation during post-trial review, we conclude that § 1292(a)(1) provides no basis for affirming the decision below [that the order was appealable].

—— U.S. at ——, 107 S.Ct. at 1183 (footnote omitted).

## IV

The import given to the series of decisions from *General Electric* to *Carson* has not been uniform in the circuits or, indeed, within a circuit. All are in agreement that the *threshold* requirement for invoking section 1292(a)(1) is that the order must have the effect of the grant or denial of an injunction, that is, it must be established that the order is injunctive in nature.[5] Some courts have applied the *Carson* requirements for appealability to all deemed injunctive orders, excluding as a class only orders which are specifically directed to the propriety of preliminary injunctive relief. *See, e.g., Shanks v. City of Dallas*, 752 F.2d 1092, 1097 (5th Cir.1985) ("the erroneous denial of a preliminary injunction,

therefore, will necessarily result in the type of serious consequence that § 1292(a)(1) is designed to prevent"); *Chappell & Co. v. Frankel*, 367 F.2d 197 (2d Cir.1966) (in banc) (only order refusing to grant preliminary injunction, as a class of case, poses a threat of irreparable harm). *Cf. In re Flight Transp. Corp. Sea Litig.*, 730 F.2d 1128, 1133 (8th Cir.1984), *cert. denied*, 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985) (applied *Carson* requirements to deemed denial of motion for preliminary injunction). Others have found various distinctions, derived from the earlier decisions, for continuing to hold certain classes of deemed injunctive orders appealable as of right, that is without the separate showings required in *Carson*. *See, e.g., Donovan v. Robbins*, 752 F.2d 1170, 1174 (7th Cir.1985) (Carson requirements apply to deferral of permanent injunction but not to definitive denial of permanent injunction); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 261 (7th Cir.1984) (Carson requirements apply to orders that fail to address merits but not orders that address merits). Sage's challenge to the appealability of the order here is in line with those courts which have held that the *Carson* requirements of harm and unreviewability are applicable to all deemed injunctive orders.[6] *Accord South Bend Consumers Club, Inc. v. United Consumers Club, Inc.*, 742 F.2d 392, 393–94 (7th Cir.1984); *United States v. RMI Co.*, 661 F.2d 279, 281–82 (3d Cir.1981); *Gould v. Control Laser Corp.*, 650 F.2d 617, 621, 213 USPQ 1120, 1123 (5th Cir.1981). Woodard urges us to disregard the broad statements in *Carson*, which are reiterated in *Stringfellow*, as dicta. Woodard points out that

**5.** Given the interpretation that § 1292(a)(1) is not limited to orders specifically directed to the grant or denial of a preliminary injunction, appeals have been attempted from virtually every type of order of a district court. *See, e.g., United States v. Ryan*, 402 U.S. 530, 534, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971) (order requiring party to seek permission from Kenyan government before removing discovery documents from that country not injunctive); *City of Morgantown v. Royal Ins. Co.*, 337 U.S. 254, 258, 69 S.Ct. 1067, 1069, 93 L.Ed. 1347 (1949) (order denying jury trial not injunctive); *Rigaku Corp. v. Ferrofluidics Corp.*, 800 F.2d 1115, 1118, 231 USPQ 139, 141 (Fed.Cir.1986) (order re-

fusing to prohibit a party from consulting with a person during trial not injunctive). *See also* 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 110.20[1] (2d ed. 1986) and cases cited therein.

**6.** At least one court has applied the *Carson* requirements to an order *explicitly* granting an injunction. *American Can Co. v. Mansukhani*, 742 F.2d 314, 319, 223 USPQ 97, 99 (7th Cir. 1984). The Supreme Court in *Carson* expressly limited its holding to orders that have "the practical effect of refusing an injunction." 450 U.S. at 84, 101 S.Ct. at 996.

the Court did not in either case overrule *General Electric* and that the *General Electric* decision itself contains no suggestion that separate showings of harm and unreviewability are required for appealability. All that is necessary, per Woodard, is that an interlocutory order *entirely* [7] dispose of its claim for permanent injunctive relief as in *General Electric.* Support for this interpretation of *Carson* is found in *Donovan v. Robbins,* 752 F.2d at 1173, and *Winterland Concessions,* 735 F.2d at 261.

■ While Woodard is correct that the *Carson* Court did not overrule *General Electric,* a court need not overrule a prior case in order to clarify that case by stating a requirement which was met but not discussed. A court may refine holdings in its precedent which were stated or have been interpreted too broadly. Moreover, the structure of the *Carson* decision indicates that the Court was setting out a general requirement for separate showings of harm and unreviewability which had to be satisfied to establish the appealability of all deemed injunctive orders. As indicated above, the *Carson* Court specifically analyzed its prior cases, including *General Electric,* to show how the requirements stated in *Carson* inherently entered into its prior determinations. Thus, the Court did not review the prior cases simply to support the *Carson* ruling, but rather to harmonize those decisions with its more recent pronouncement. This court will not ignore as *dictum* the statement of a general rule by the Court, which results from such considered analysis, unless we are firmly persuaded that that is not what the Court intended.

■ Woodard argues that interpreting *Carson* as setting out a general rule applicable to all deemed injunctive orders conflicts with the Court's decision in *General Electric.* That conclusion is based on a misreading of that early decision. The *General Electric* Court did not hold that every order which entirely disposes of a claim for a permanent injunction is immediately appealable as of right. There, the appealed order was deemed one that denied a *preliminary* injunction, not a *permanent* injunction. The emphasis on the fact that the order had the effect of denying a *preliminary* injunction appears in the *General Electric* opinion, in the authority cited therein, *e.g., Naivette, Inc. v. Philad, Co.,* 54 F.2d 623, 624, 9 USPQ 460, 461 (6th Cir.1931), and in the *Carson* Court's harmonization of the decision.[8] An order which is deemed to deny a preliminary injunction readily satisfies the *Carson* requirements. *See, e.g., In re Flight Transp. Corp. Sea Litig.,* 730 F.2d at 1133. As with the specific denial of preliminary injunctive relief, the harm caused by an order which is deemed to deny a preliminary injunction cannot *effectually* be reviewed after the trial. By that time the question of relief or of maintaining the *status quo during* trial will have become moot. The denial of a *permanent* injunction does not necessarily have this element of harm, that is, effectual unreviewability after trial. Thus, we conclude that *General Electric* does not mandate that the *Carson* requirements are inapplicable to an order simply because it can be deemed to entirely dispose of a claim for *permanent* injunctive relief. Further, since Woodard does not assert that the subject order should be deemed to deny a *preliminary* injunction, and we would not on the facts here so consider it,[9] the subject order is not

---

7. Some courts have held appealable orders which *entirely* dispose of a claim for injunctive relief, but not those where part of the request for injunctive relief remains. *See Brown v. Kerr-McGee Chem. Corp.,* 767 F.2d 1234, 1239 (7th Cir.1985).

8. Similarly, in *Switzerland Cheese* the Court spoke of the request for summary judgment serving as a motion for preliminary injunction. 385 U.S. at 24, 87 S.Ct. at 194. In *Donovan v. Robbins,* 752 F.2d at 1174, the court considered this to be the "heart" of the *Carson* ruling.

9. Although Woodard has sought preliminary injunctive relief in its complaint since 1981, it has never moved for or sought a hearing on such relief. *Cf.* 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice & Procedure § 3924 at 69–70 (1977 & 1986 Supp.) (dismissal of counts seeking permanent and preliminary injunction should be appealable "only if the request for a preliminary injunction was in fact being pressed.")

comparable to the order held to be immediately reviewable in *General Electric.*

Nor do we agree with Woodard's assertion that interlocutory orders which effectively deny permanent injunctive relief based on the substantive *merits* of the claim cause such serious harm *pendente lite* that immediate appeal is necessary in all cases. Woodard bases this proposition on the Court's explanation in *Switzerland Cheese* and *Gardner* that the unappealable orders therein did not affect the *merits* of the injunctive claim. *Accord Winterland Concessions,* 735 F.2d at 261. A close reading of those opinions, however, shows that the Court was distinguishing between orders affecting the merits and those merely regulating the trial proceedings. That distinction pertains to the threshold issue of whether the order should be deemed injunctive in nature. *Accord Shanks v. City of Dallas,* 752 F.2d at 1095–96 (denial of class certification on "merits" had practical effect of denying injunction); NOTE, 48 Geo.Wash.L.Rev. 456, 468–69 (1980) (recognized that "merits" requirement overlaps "injunctive" requirement). The statements in *Switzerland Cheese* and *Gardner,* nevertheless, have led some to conclude that the *Carson* requirements apply to orders which defer ruling on the merits, *e.g.,* the denial of summary judgment because of a fact issue, as in *Switzerland Cheese,* but not to those that definitively dispose of a claim. *See, e.g., Donovan v. Robbins,* 752 F.2d at 1174; *Parks v. Pavkovic,* 753 F.2d 1397, 1403 (7th Cir.), *cert. denied,* 473 U.S. 906, 105 S.Ct. 3529, 87 L.Ed.2d 653, — U.S. —, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985) (dicta).[10] As indicated above, however, preliminary and permanent injunctions are not inherently the same as far as unreviewability after trial is concerned. Whether permanent injunctive relief is delayed until after the trial, after an appeal, or after a second trial, a *permanent* injunction is generally still obtainable. That the delay in obtaining a permanent injunction

*may* in some instances be extended if an immediate appeal is not allowed does not mean that the harm caused by the order is immediate and requires immediate review. Section 1292(a)(1) is directed, not to expediting proceedings, but to the *need* for appeal of orders having an immediate serious, if not irreparable, consequence. As emphasized in *Shanks v. City of Dallas,* 752 F.2d at 1096, it is the *immediacy* of the harm caused by the court's order that is critical to appealability:

> If an order would have the same serious consequences irrespective of whether it is reviewed immediately or upon final judgment, the requirement of irreparable harm has not been met for purposes of § 1292(a)(1).

*Accord Brown v. Kerr-McGee Chem. Corp.,* 767 F.2d 1234, 1239 & n. 3 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Kartell v. Blue Shield of Mass., Inc.,* 687 F.2d 543, 551 (1st Cir.1982).

The deferral/disposal analysis creates a technical distinction between types of orders which bears no apparent relationship to the purpose of section 1292(a)(1), which is to permit appeal of orders causing immediate harm and which are effectually unreviewable after trial. It simply does not hold true that harm *pendente lite* is present whenever a permanent injunction is disposed of on the merits of the claim. *See Shanks v. City of Dallas,* 752 F.2d at 1097 n. 6. Further, in *Carson,* the Court, after setting out the requirements for harm and unreviewability, satisfied itself that they were met in connection with an order of the district court that "did more than postpone consideration of the merits of petitioner's injunctive claim." 450 U.S. at 87 n. 12. Thus, we must reject the deferral/disposal distinction.

The course of proceedings in *Plymouth County Nuclear Information Comm., Inc. v. Boston Edison Co.,* 655 F.2d 15 (1st Cir.1981), illustrates the fallacy in accept-

---

**10.** Whether an order "definitively" disposes of a claim under this line of cases has led to extensive analysis, *see, e.g., Elliott v. Hinds,* 786 F.2d 298, 300–01 (7th Cir.1986), including whether there exists a "special need to appeal at this time," *Samayoa v. Chicago Bd. of Educ.,* 783 F.2d 102, 104 (7th Cir.1986), which is vaguely reminiscent of serious, perhaps irreparable, consequences and lack of effectual challenge except by immediate appeal.

ing as a truism that orders deemed to deny permanent injunctions, as a class, inherently have serious *pendente lite* effect. The *Plymouth County* plaintiffs sought to appeal from an order striking, on the merits, a request in their complaint to enjoin the continued operation of a nuclear power plant. In dismissing the appeal, the court noted that a preliminary injunction had been denied to plaintiffs a year and a half before, that they did not appeal from that earlier order, that they never sought reconsideration, and that the defendant's motion to strike was not made in an effort to forestall a renewed request for preliminary relief. The court concluded:

> Under the circumstances, we think plaintiffs are hard pressed to demonstrate that the instant order has any *immediate* consequences of a serious nature, or that they will suffer "irreparable harm" pending final disposition of the case in the district court. To be sure, the district court may have "finally" determined the "legal sufficiency" of plaintiffs' claims for injunctive relief. Even so, its order has the "practical effect" only of denying *permanent* injunctive relief, and as such may be "effectively challenged" on appeal from final judgment. Such an order, we think, is, despite whatever aspects of "finality" it may possess, immediately appealable only pursuant to Fed.R.Civ.P. 54(b) or 28 U.S.C. 1292(b).

655 F.2d at 18.

Finally, we find it worth noting that serious, if not irreparable, harm *pendente lite* is a consideration in connection with the review of an order dealing specifically with a preliminary injunction. In concluding that *deemed* injunctive orders are not appealable without a showing of such harm, in a sense, such orders are merely placed on an equal footing with *specific* injunctive orders. *Shanks v. City of Dallas,* 752 F.2d at 1097.

In view of the above, we conclude that as a rule of general applicability to orders deemed to deny injunctions, the *Carson* rule is workable and sensibly balances the statutory provisions of sections 1291 and 1292(a)(1) in light of their respective purposes. Under *Carson,* those interlocutory injunctive orders which justify a departure from the rule of finality of section 1291 are fully accommodated. Those with no urgency for interlocutory review can be summarily dismissed. Thus, we are not persuaded that we can ignore the *Carson* requirements as mere dicta. Nor are we persuaded that those requirements do not apply to orders deemed to entirely dispose of an injunctive claim. Therefore, the *Carson* requirements must be satisfied to establish the appealability of the subject order, and we turn to the particular facts of record herein.

## V

To show that it meets the *Carson* requirements, Woodard builds an argument around the fact that the remaining term of their patent is short, only some three years. If this appeal is dismissed, Woodard argues, they must wait until the end of the present trial, appeal to this court, and then suffer through another trial, by which time they predict that their patent will have expired. Under Woodard's scenario, they will likely be deprived of all injunctive relief against Sage, even if Sage is ultimately found liable. Therefore, they conclude: "An immediate right of appeal on the part of plaintiffs is essential to preserve their rights of exclusion."

Sage points out that, even if the patent expires and Woodard thereafter prevails, Woodard will not lose its ability to protect itself by our denial of immediate appellate review because it could still obtain monetary damages. *Cf. South Bend Consumers Club, Inc. v. United Consumers Club, Inc.,* 742 F.2d at 394 (plaintiff will still have right to seek monetary damages despite expiration of restrictive covenant). Woodard replies that injunctive relief is needed to preserve its legal interests "against future infringement which may have market effects never fully compensable in money." *Atlas Powder Co. v. Ireco Chems.,* 773 F.2d 1230, 1233, 227 USPQ 289, 292 (Fed.Cir.1985). At oral argument Woodard sought to expand on these alleged

market effects with a theory of the infringer's capturing a share of the market, which could never be recovered. This type of factual argument on harm is not one which this court can or will resolve in the first instance. The irreparable harm and lack of effective later review must be apparent from the record. *Cf. Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1224, 93 L.Ed. 1528 (1949) (Court looked to whether final judgment would be "too late effectively to review the present order" and whether rights would "have been lost, probably irreparably.") Indeed, Woodard's argument illustrates the advisability of at least first proceeding with a motion under Fed.R.Civ.P. 54(b) in order to develop a factual record if that motion is denied.

We agree, as Woodard asserts, that "[p]atent rights do not peter out as the end of the patent term ... is approached." *Atlas Powder*, 773 F.2d at 1234, 227 USPQ at 293. We do not, however, accept the remainder of Woodard's argument, that the need for injunctive relief necessarily is more imperative as the end of the patent term approaches. Indeed, an injunction against infringement may be absolutely essential at the beginning of the term of the patent, *e.g.*, to enable a patent owner to establish a new business. In any event, Woodard's conduct of the case belies the now asserted urgent need for injunctive relief.

In this connection, we note that Woodard failed to seek a preliminary injunction. In *Shirey v. Bensalem Township*, 663 F.2d 472, 476 (1st Cir.1981), the First Circuit expressed the view:

> The party's own evaluation that there is no need for injunctive relief *pendente lite* is a good indication that the status quo can continue until the ultimate conclusion of the litigation without interlocutory appellate review.

*Accord Brown v. Kerr-McGee Chem. Corp.*, 767 F.2d at 1240; *Kartell v. Blue Shield*, 687 F.2d at 553 n. 21; *cf. Plymouth County Nuclear Information Comm. v. Boston Edison Co.*, 655 F.2d at 17–18 (delay in seeking review of denial of preliminary relief evidences lack of irreparable harm). Woodard argues, however, that their failure to seek preliminary relief is not objective evidence that the trial court's order will cause them no harm *pendente lite*. Woodard excuses their failure on the ground that it would have been futile to seek an injunction before the creation of this court. They assert that they could not meet the almost impossible burden of proving probability of success at trial required for a preliminary injunction in a *patent* case by the Seventh Circuit. That argument is not only inherently unconvincing— an attempt could have been made—but also it fails to explain Woodard's continued inaction if it believed this court might rule differently. The short of it is that Woodard has never moved for or requested a hearing on preliminary relief. Woodard's inaction is objective evidence from which to infer that they will not suffer irreparable harm *pendente lite*.

Turning to unreviewability, Woodard does not dispute that it has the right to pursue a post-trial appeal of the judgment in favor of Sage, but argues that they should not be forced to undergo the burden and delay of a second trial. That argument is simply directed to Woodard's convenience and ignores the *Carson* requirement that the order sought to be appealed must be effectively unreviewable unless an interlocutory appeal is taken. As previously indicated, the final judgment rule of section 1291 expresses Congress's view that the prospect of a second trial is preferable to the disruption of orderly trial proceedings and attendant delay by interlocutory review unless clearly necessary. This view was reiterated in *Stringfellow*, —— U.S. at ——, 107 S.Ct. at 1183:

> As we have noted in the past, the finality rule of § 1291 protects a variety of interests that contribute to the efficiency of the legal system. Pretrial appeals may cause disruption, delay, and expense for the litigants; they also burden appellate courts by requiring immediate consideration of issues that may become moot or irrelevant by the end of trial. In addition, the finality doctrine

protects the strong interest in allowing trial judges to supervise pretrial and trial procedures without undue interference. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. [368], 374 [101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981)].

Thus, irreparable harm is not shown by the prospect of a second trial.

■ In view of the above factual considerations, we conclude that Woodard has failed to establish that the interlocutory order granting Sage summary judgment meets the *Carson* requirements that the order have serious consequence and be effectually unreviewable after trial, which are necessary to establish its appealability under section 1292(a)(1).

### VI

Turning now to the specific Federal Circuit decisions which prompted this court to act *in banc,* we conclude that none of the decisions conflicts with our ruling herein.

In the *Veach* case, the appealed order, like the one at hand, was injunctive in nature. The district court had dismissed a patent infringement claim in a multicount complaint on the defendant's motion for summary judgment. Under *Carson,* that in itself is insufficient to invoke section 1292(a)(1) as of right and no effort was made to show irreparable harm *pendente lite* or effectual unreviewability at the end of trial.

In the *Holmes* case, the attempted appeal centered on the question whether the order was injunctive in nature. The *Holmes* panel correctly looked at the pleadings and noted that the appellant had sought no injunctive relief, and it rejected appellant's argument that an order may refuse an injunction simply because it makes an injunction impossible. If injunctive relief is not requested, as it was not in connection with the *Holmes* appellant's declaratory judgment claim, it would be only by the most tortured and strained view of the proceedings that the order amounted to denial of an injunction. There simply was no order which could be deemed to deny an injunction.

The *Holmes* panel went on to opine that in connection with an interlocutory appeal from a ruling on summary judgment it is incumbent on the appellant to "alert the [district] court that it would be passing indirectly on the availability of injunctive relief." 713 F.2d at 793–94. Both parties question the imposition of that requirement under section 1292(a)(1), although the appellee here asserts it would have a salutary effect to prevent piecemeal appeals.

The quoted statement does not impose an additional general requirement to appealability under section 1292(a)(1). As indicated, the threshold requirement of section 1292(a)(1) is that an order must be injunctive in nature. Where the pleadings make no reference to injunctive relief, it appears self-evident that some other step must be taken to lay a foundation for saying that the order is in effect one denying an injunction. In that context, the *Holmes* decision makes eminent sense and we adhere to it.

In *Chaparral,* as in *Holmes,* there was a question whether the grant of partial summary judgment in favor of defendant on two counts of a multicount complaint met the threshold requirement that the order in effect denied injunctive relief. The *Chaparral* court reiterated the statement in *Holmes* that the district court should have been alerted to the injunctive import of its order "considering the complexity of the pleadings and issues." 798 F.2d at 459. The panel was simply saying, as in *Holmes,* that the appealed order must clearly be shown to be injunctive in nature. Alternatively, the *Chaparral* court held that the appellant "failed to disclose any 'serious, perhaps irreparable, consequence' flowing from the partial summary judgment," as required by *Carson.* 798 F.2d at 459.

■ Under the above analyses, the holdings of *Veach, Holmes,* and *Chaparral* need no modification except that we clarify that a litigant need not specifically alert a district court that its ruling on an interlocutory matter in effect denies an injunction if the pleadings make that self-evident.

With respect to another decision of this court, in *Rigaku Corp. v. Ferrofluidics Corp.,* 800 F.2d 1115, 231 USPQ 139 (Fed.

Cir.1986), this court unequivocally followed *Carson* in holding that the order must be, not only injunctive in nature, but also shown to cause serious harm which can effectually be reviewed only by immediate appeal. That decision is entirely in accordance with our holding here.

### VII

Accordingly, it is ordered that the motion to dismiss the subject appeal for lack of jurisdiction under 28 U.S.C. § 1292(c)(1) is granted. Woodard's arguments supporting the appealability of the district court's order are not frivolous. Each party shall bear their own costs and attorney fees.

DISMISSED.

EDWARD S. SMITH, Circuit Judge, concurs in the result.